UNITED STATES DICTRICT COURT
for the
District of Wyoming
Trial Division

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2026 JAN -2  AM 9: 50

MARGARET BOTKINS, CLERK
CHEYENNE

Michael J. Clement, Esquire: *PRO SE*       )
15 Nelson Drive (NO MAIL DELIVERY)          )
P. O. Box 1067                              )
Jackson, WY 83001-1067                      )
Email: mclement@wispearl.com                )
Phone: 267-664-5403                         )
Fax: 610-828-4887                           )
                                            )
               Plaintiff   )   CASE NO. 26-CV-1-ABJ
                                            )
Mr. Chad Hudson, in his capacity as         )
Forest Supervisor, USDA Forest Service      )
Bridger-Teton National Forest               )
340 N. Cache                                )
Jackson, WY 83001                           )
Email: chad.hudson@usda.gov                 )
Phone:                                      )
                                            )
               Defendant #1 )
                                            )
Jackson Hole Community Housing Trust        )
110 E. Broadway Avenue, 2nd Floor           )
P. O. Box 4498                              )
Jackson, WY 83001                           )
               Defendant #2 )
                                            )

## COMPLAINT AND REQUEST FOR INJUNCTION AND DECLATORY JUDGMENT

1. Plaintiff Michael J. Clement is an adult individual and a resident of Wyoming with a home at 15 Nelson Drive, Jackson, Wyoming (mailing address P.O. Box 1067, Jackson, Wyoming 83001-1067), where he resides with his wife Linda. Plaintiff is a citizen of the United States. Plaintiff is a licensed attorney but is filing this Motion *PRO SE*.

1

2. Defendant #1 is Chad Hudson, in the capacity as Forest Supervisor, USDA, Forest Service, Bridger Teton National Forest, with an address at 340 N. Cache, Jackson, Wyoming 83001 (sometimes hereinafter "Supervisor Hudson"). Defendant's email address is chad.hudson@usda.gov.

3. Defendant #2 address is Jackson Hole Community Housing Trust, with offices at 110 E. Broadway Avenue, 2nd Floor, P. O. Box 4498, Jackson, WY 83001 (sometimes hereinafter "Housing Trust").

4. A.    <u>Jurisdiction</u>. The Plaintiff's Complaint and this Motion are filed pursuant to the provisions of the United States Administrative Procedure Act ("APA"), 5 U.S.C. Sections 701–706, which authorizes federal courts to review agency actions to ensure agencies conduct their business lawfully: The review in this matter pertains Special Use Permit issued and approved by Supervisor Hudson pursuant to the National Forest Management Act, Title 36 – Parks, Forest and Public Property, Chapter 11 – Forest Service, Department of Agriculture, Part 252 – Land Uses; 36 C.F.R. Part 251, Subpart B Special Uses, Promulgated pursuant to the National Forest Management Act.

B.    <u>Venue</u>. Venue is proper since Plaintiff's resides and Defendants' offices are in and the Forest Service land subject to this Complaint is in Teton County, Wyoming.

## PROCEDURAL HISTORY AND FACTS

5. Attached hereto as Exhibit "A" and made a part hereof is the Decision Notice & Finding of No Significant Impact ("FONSI") issued for the Jackson Administrative Site

Land Conveyance and Development, signed by Jacqueline A. Buchanan, Forest Supervisor, Bridger-Teton National Forest, dated May 4, 2012.

6. Attached hereto as Exhibit "B" and made part hereof is the "Review of Environmental Compliance Documents, Jackson Administrative Site Lands Conveyance and Development Environmental Assessment, U.S.F.S. – BTNF - Jackson RD, Selected Modified Alternative Review, signed digitally by Chad Hudson, Bridger-Teton National Forest, Forest Supervisor, dated September 24, 2025 ("Review").

7. Attached hereto as Exhibit "C" and made a part hereof is the U.S. Department of Agriculture Forest Service Special Use Permit, approved by Chad E. Hudson, Forest Supervisor, Bridger-Teton National Forest U.S.D.A. Forest Service, dated November 21, 2025 ("Special Use Permit").

8. The genesis of the potential construction of residential units at the Nelson Drive trailhead began in or about 2009 as part of the "Jackson Administrative Site Lands Conveyance and Development" process described in the 2012 FONSI. Alternative 5 in the FONSI originally authorized: "Construction of multifamily <u>buildings</u> containing up to 10 single family housing <u>units</u>[1] at Nelson Drive Residential Site ..." (SEE FONSI at p. 9). (Emphasis Supplied).

9. In the decision ultimately issued in the 2012 FONSI, Forest Service Supervisor Buchanan's Finding of No Significant Impact authorized:

---

[1] The term "unit(s)" is used extensively by the Forest Service and its Supervisors throughout the process which is the subject of this litigation: Merriam-Webster Dictionary defines "Unit" in pertinent part as follows:
1a: the first and least natural number: ONE
 b: a single quantity regarded as a whole in calculation
3h: one of a number of apartment or residences in a building or complex

> "Up to 13 housing <u>units</u>, with associated amenities, constructed as multifamily complexes (could be apartments, condos, duplexes, triplexes, etc., or a combination of;
>
> Construction within an area of existing development and/or adjacent along the eastern boundary of development situated around the Putt-Putt trailhead.
>
> Paving of St. and Putt-Putt trailhead parking area services."
> (FONSI at p. 3). (Emphasis Supplied).

10. In the FONSI, Forest Service Supervisor Buchanan outlined the reason for her decision:

> "In the EA, proceeds of the sale (of administrative land at 340 N. Cache Street, Jackson, Wyoming) ... the proceeds from the sale would be used to remodel/expand several structures on that site, in addition to constructing new facilities at Nelson Drive Residential and Cottonwood Work Center Administrative Sites."

11. In the FONSI, in regard to the Nelson Drive Residential SiteForest Service Supervisor Buchanan reasoned: "The parcel configuration and acreage does not change what is shown in Alternative Five. Alternative Three allows me to authorize three additional housing <u>units</u> at Nelson, beyond the 10 disclosed in Alternative Five." (FONSI p. 6.) (Emphasis Supplied).

12. In her summary in the FONSI, the National Forest Supervisor stated that her decision will: "#5. Retain a majority of the facilities at the north Cache site, resulting in <u>fewer facilities</u> being placed at either the Cottonwood Work Center or at Nelson Drive Residential Site; (FONSI p. 7) (Emphasis Supplied).

In summary, the public benefits include... providing for increased <u>housing for Forest Service employees</u>." (FONSI at p. 7). (Emphasis Supplied).

4

13. Plaintiff had and has the right to rely upon the FONSI and the Forest Service's procedures regarding its actions, especially its "Jackson Administrative Lands Conveyance And Development" procedures.

14. To the best of plaintiff's knowledge, information, and belief the Forest Service published no notice of any action or change with respect to the proposed development of 13 residential units at the Nelson Drive trailhead at any time between May 2012 and November 2025, when the Special Use Permit was issued.

15. Thirteen years after the FONSI, on September 24, 2025, Supervisor Chad Hudson issued his Review regarding residences to be constructed at the Nelson Drive Trailhead and wrote in his Review that: "the proposed change in the number of housing units from 13 to 14 within a smaller footprint does not change the original finding of no significance." (Emphasis Supplied).

16. The Review by Supervisor Chad Hudson on September 24, 2025 was unlawfully issued without any notice to the public, public comment or current environmental analysis.

17. On November 21, 2025 Supervisor Chad Hudson signed and approved the Special Use Permit which states, in pertinent part:

> "A. AUTHORITY. This permit is issued pursuant to the Organic Administration Act, June 24, 1897 and 36 CFR Part 251, Subpart B, as amended and is subject to their provisions."

18. The Special Use Permit states that the permit holder, Jackson Hole Community Housing Trust ("Housing Trust"), has been issued the permit for the purpose of:

> "Construction, operation and maintenance of a residential development at the Nelson Trailhead on the Jackson Ranger District of the Bridger-Teton National Forest.

> Development includes up to <u>14 buildings</u> comprising 24 one-bedroom apartments (in triplexes, and 12 two-bedroom apartments in duplexes), for a total of <u>36 units</u>. Permit holder will offer U.S. Department of Agriculture Forest Service (Forest Service) permanent and seasonal employees the first option to lease 13 of the units …" (Special Use Permit at p. 1). (Emphasis Supplied).

The Special Use Permit was issued, authorized and signed by Supervisor Chad Hudson without notice, public comment or Environmental Analysis.

19. Neither the FONSI nor the Environmental Assessment performed in 2009 through 2012 authorize, address or contemplate the impact of a 36 housing unit complex on the Nelson Drive trailhead for occupancy by non-forest service employees chosen by the Housing Trust. Ten single family housing units were initially considered and thereafter amended to allow for 13 residential units for Forest Service employees.

## SUBSTANTIVE VIOLATIONS OF STATUTE, REGULATION, AND THE UNITED STATES CONSTITUTION

20. The interests which Plaintiff seeks to protect are within the zone of interests that Congress intended to protect when it passed:

(i) the National Forest Management Act and Title 36 - Parks, Forests and Public Property, Chapter II - Forest Service, Department of Agriculture, Part 252 - Land Uses; 36 C.F.R. Part 251, Subpart B - Special Uses, promulgated pursuant to the National Forest Management Act;

(ii) the National Environmental Policy Act, 42 U.S.C.A. Sections 4332, et seq. (NEPA); and

(iii) the Administrative Procedure Act, 5 U.S.C. 701-706.

21. 36 C.F.R. Part 251, Subpart B - Special Uses, provides in Section 251.53 in pertinent part:

> "Subject to any limitations contained in applicable statutes, the Chief of the Forest Service, or other Agency official to whom such authority is delegated, may issue special use authorizations for National Forest System land under the authorities cited and for the types of uses specified in this section as follows" …"

22. Nowhere does Section 251.53 authorize the use specified in the Special Use Permit for the construction of 36 residential units to be "constructed, operated and maintained" by the Housing Trust as an apartment complex wherein: only 13 units are available to Forest Service employees pursuant to a "first option to lease"; and, the remaining units are available not to the Public or Plaintiff but only tenants chosen by the Housing Trust.

23. Section 251.53(d) of 36 C.F.R. Part 251, Subpart B, as amended, specifically limits uses and term permits for periods not over 30 years:

    (1)    for not over 80 acres for:
          (i) hotels, resorts, and other structures and <u>facilities for recreation, public convenience, or safety</u>;
          (ii) industrial or commercial purposes; and
          (iii) education or public activities; and

    (2)    for not over 5 acres for summer homes and stores; …" (Emphasis Supplied)

24. The Special Use Permit is not for the purpose of "hotels, resorts and other structures and facilities for recreation, public convenience, or safety;" nor is it for "summer homes and stores."

25. In 2024, the United States Supreme Court overruled the "Chevron Doctrine" in Loper Bright Enterprises v. Raimondo, 603 U.S. 369 (2024). In Loper Bright, the Supreme Court held that the Chevron framework contradicted Section 706 of the APA's requirement that courts "decide all relevant questions of law" and "interpret … statutory provisions. (Id. at 603 U.S. 398–399). The majority opinion rejected Chevron's presumption that a statutory ambiguity indicates a delegation to agencies to choose one among the multiple possible reasonable interpretations of a statute. (Id. at 603 U.S. 399–400) Statutes, the Court held, have a single best meaning fixed at the time of enactment, and the APA's command requires courts to determine the meaning of a statute using their "independent legal judgment." (Id. at 603 U.S. 400–01).

26. There really is no ambiguity which would even give rise to the Supervisor Hudson's claim that he has the right to issue a Special Use Permit to the Housing Trust to construct, operate, and maintain an apartment complex on public Forest Service land subject to the provisions in the Special Use Permit. *Expresio Unis Est Exclusio Alterius*.

27. Assuming *ARGUENDO* there might be an ambiguity: it is a bridge too far to convert authority to construct "hotels, resorts, and other structures and facilities for recreation, public convenience, or safety" into authority to construct, operate and maintain an apartment complex on public Forest land wherein the Forest Service received only a right of first refusal to lease 13 out of 36 units and the Housing Trust gets to determine who may occupy the remaining units, and pay no fee.

28. Such a result is nowhere to be found in any statutory or regulatory scheme cited in the Special Use Permit, or in any other governing authority.

29. The Special Use Permit also states that units rented to Forest Service employees will be set at rates established by the federal Internet Quarters Management Information System ("IQMIS"), to be paid annually, and in no event shall the annual rates paid to permit holder be reduced if annual IQMIS rates are lowered. The last clause of this sentence appears to indicate that Forest Service employees will be punished by having to pay more than the IQMIS allowance if the IQMIS allowance rates decrease. And, Land Use Fees have been waived which also violates the spirit and intent of the National Forest Management Act and fails to comply with the Provisions of 36 CFR Section 251. 58 (f) and (g).

30. The Special Use Permit violates Plaintiff's rights to due process of law and equal protection of the laws granted by the Fourteenth (14th) Amendment To The Constitution Of the United States Of America in that:

 (i) it discriminates against Plaintiff by precluding him from occupying a unit in an apartment complex on public forest;
 (ii) it was issued without affording Plaintiff the ability to review the project set forth therein, make public comment and interact with other similarly affected neighbors in accordance with procedures governing the Forest Service; and
 (iii) (iii) it adversely impacts Plaintiff without affording him the right to review and comment on the substantive validity and procedural integrity of the Forest Service's actions in accordance with law.

### PROCEDURAL VIOLATIONS

31. The Special Use Permit was issued without requisite comment from the public including Plaintiff who is directly affected by the Special Use Permit in that:

 (i) No notice to the public including Plaintiff to review and comment on a completely different project from that which was the subject of the FONSI and public comment in 2009-2012;

9

(ii)      No notice to the public or opportunity for the public including Plaintiff to comment on a housing project proposed for the Nelson Drive Trailhead for a period of over 13 1/2 years;

(iii)      No Environmental Assessment has been conducted in connection with the Special Use Permit for an apartment complex of 36 dwelling units plus amenities;

(iv)      Substantial changes have occurred since the last public comment and FONSI not only in and around the Nelson Drive trailhead, the PUTT-PUTT trail and their respective usage but also in the Plaintiff's adjacent neighborhood, which will be immediately and adversely affected by the project proposed in the Special Use Permit;

(iv)      Even major development proposals are limited to planning of no more than 10 years in duration pursuant to 36 C.F.R. Part 251 Subpart B, Section 251.54(f)(2); and, therefore Supervisor Hudson may not rely upon public comment conducted in 2009 – 2012, or in the 2012 FONSI, or the Environmental Assessment therein.

32. The Special Use Permit was issued without requisite Environmental Impact Analysis on the neighbors including Plaintiff since there has been no Environmental Assessment performed since 2012; and, that Environmental Assessment performed from 2009 to 2012 did not address or contemplate the impact of 36 housing units at the Nelson Drive trailhead: it initially considered 10 single family housing units and thereafter 13 housing units in multifamily buildings. (See FONSI at P. 9).

33. In his September 24, 2025, Review Supervisor Chad Hudson found that, "the proposed change in the number of housing units from 13 to 14 within a smaller footprint does not change the original finding of no significance." Yet, on November

21, 2025, in a spectacular slight of hand, Forest Supervisor Chad Hudson approved a Special Use Permit authorizing the construction of 36 housing <u>units</u> in 14 multi-family <u>buildings</u> to be built and completely controlled by a special interest entity for occupancy mainly by those chosen by that special interest entity. (Emphasis Supplied).

34. In his November 21, 2025 review, Supervisor Chad Hudson failed to meet the requirements of the National Environmental Policy Act of 1969, as amended, Section 108 which provides, in pertinent part:

> "1) when an agency prepares a programmatic environmental document for which judicial review was available, the agency may rely on the analysis included in the programmatic environmental document in a subsequent environmental document for related actions as follows: (1) within five years and without additional review of the analysis in the programmatic environmental document, unless there are substantial new circumstances or information about the significance of adverse effects that bear on the analysis."
>
> "2) after five years, so long as the agency re-evaluates the analysis in the programmatic environmental document and any underlying assumption to ensure reliance on the analysis remains valid."

35. In the Review and the Special Use Permit, Supervisor Chad Hudson failed: (i) to take into consideration substantial new circumstances or information about the use of the Nelson Drive trailhead and surrounding environs which would have been required within a five year period; (ii) did not cause the agency to re-evaluate the analysis in the programmatic environmental document and any underlying assumption to ensure reliance on the analysis remains valid, even though the programmatic environmental document was over 13 years old; and (iii) purposefully ignores the basis of the FONSI

and Environmental Analysis which evaluated the impact of 13 dwelling units as opposed to 36 dwelling units plus amenities.

36. Plaintiff, like his neighbors, has been surprised and blindsided by the lack of transparency as well as the shift in scope from 13 units to 36 units to be controlled by a special interest entity in the process undertaken by the Forest Service in this matter:

    (i)    no public comment has been taken on the Nelson Drive Residential in over 13 years;

    (ii)    (ii) the Special Use Permit provided to Teton County, which is attached hereto as Exhibit "C", does not even contain the appendices listed therein:

Appendix A - No map is attached;
Appendix B - no outline of phrases and deliverables is attached;
Appendix C - no operating plan is attached, even though the Special Use Permit provides on page 2, under III, Section D, that, "the holder shall prepare and annually revise by March 1, 2025 an operating plan."

## FINAL ACTION

37. For all of the reasons set forth hereinabove, Supervisor Chad Hudson's issuance and approval of the Special Use Permit is unlawful, arbitrary and capricious on substantive and procedural grounds.

38. The issuance and approval of the Special Use Permit by Supervisor Chad Hudson is a final action and represents the consummation of the USDA Forest Service's district decision-making process; and, it is an action by which rights or obligations have been determined and/or from which legal consequences will flow as set forth hereinabove.

## STANDING

39. As a result of the actions of Supervisor Hudson, Plaintiff has suffered and/or is imminently threatened with a direct adverse impact upon Plaintiff's aesthetic, recreational and/or economic interest as well as Plaintiff's right to due process interest including, without limitation, the following:

(i) Plaintiff lives on Nelson Drive, 1 block (approximately 400 yards) from the Nelson Drive trailhead and frequently (on average once a week) walks from his residence up Nelson Drive to the Nelson Drive trailhead and hikes in National Forest land starting at that trailhead;

(ii) Plaintiff's residence, garage and driveway face Nelson Drive;

(iii) Supervisor Hudson's unlawful actions, including without limitation his issuance of a Special Use Permit as hereinabove described will permit the construction of a 36 unit apartment complex in the fields and woods where the Nelson Drive trailhead is located, to the detriment of Plaintiff's aesthetic and recreational experience on National Forest land at the Nelson Drive trailhead;

(iv) Supervisor Hudson's unlawful issuance of a Special Use Permit to allow the construction of 36 additional dwelling units taking access to and from Nelson Drive will have an immediate and direct detrimental environmental impact upon Plaintiff including without limitation: Nelson Drive has no sidewalk and is narrow, winding and inadequate to safely handle vehicular traffic along with pedestrians and hikers;

(v) the construction of 36 dwelling units will have a substantial detrimental impact upon the neighborhood in which Plaintiff resides due to traffic, noise, congestion, parking and increased impervious coverage.

(vi) Supervisor Hudson's unlawful issuance of a Special Use Permit to allow the Jackson Hole Community Housing Trust to construct, operate and maintain a 36 unit apartment complex on public Forest land wherein Plaintiff will not be eligible to occupy deprives Plaintiff of his right to use and/or enjoy that public Forest land[2]; and, discriminates against him violating his equal rights under the United States Constitution.

(vii) The Special Use Permit was issued unlawfully by Supervisor Hudson depriving Plaintiff his right to due process to receive notice and to review and comment upon the lack of legal basis for the Special Use Permit and its significant adverse impact affecting Plaintiff and his surrounding environmental, including the Nelson Drive Trailhead area.

---

[2] In essence, National Forests are federal public lands, available for public use and enjoyment.

13

40. Plaintiff has been aggrieved by the approval of the Special Use Permit issued by supervisor Chad Hudson and has no adequate remedy other than the instant litigation.

41. In December, 2025, the Housing Trust secured funding in part from the Town of Jackson for the project set forth in the Special Use Permit and has announced its intention to begin construction in the spring of 2026.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court ENJOIN the implementation of the Special Use Permit; and, thereafter DECLARE that the Special Use Permit was unlawfully issued and approved so that it is null and void.

## CERTIFICATION

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

## PRO SE REPRESENTATION

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 12/30/25

Signature of Plaintiff: /s/ Michael J. Clement

Printed Name of Plaintiff: MICHAEL J. CLEMENT

Address: For Purpose of Notification: 460 Norristown Road, Suite 110, Blue Bell, PA 19422.

Email: mclement@wispearl.com          Phone No.: 267-664-5403


4904-4300-1219

15