# EXHIBIT "A"

# Decision Notice
# & Finding of No Significant Impact

# Jackson Administrative Site Land Conveyance and Development

USDA Forest Service
Bridger-Teton National Forest
Teton County, Wyoming

## Background

The Bridger-Teton National Forest (BTNF) completed an environmental assessment (EA) on October 28, 2009, to analyze and disclose the effects of four alternatives for selling administrative land at 340 North Cache Street, Jackson, Wyoming, and for developing facilities at North Cache, Nelson Drive Residential and Cottonwood Work Center administrative sites. The project is under the authority of the *Forest Service Facilities Realignment and Enhancement Act of 2005* (P.L. 109-54). In the EA, proceeds of the sale were to be used to replace all existing building structures on the North Cache administrative site with exception of the Ranger District Office, in addition to constructing new facilities at the North Cache, Nelson Drive Residential and Cottonwood Work Center administrative sites. All three sites had previously been set aside as administrative sites as a part of the operations for the BTNF. All three sites are located within Teton County, Wyoming.

No decision was made after the 2009 EA was released to the public. However, public comments were received from many interested parties.

Because of the length of time since the original EA was released in 2009, there was concern that those interested in the project may have lost contact or were no longer aware of the project status. In addition, the Forest decided to create a new alternative in response to both public comments and in recognition that there have been several changed conditions. Consequently, the Forest completed a Supplement to the EA which was released on January 27, 2012. The Supplement to the EA developed a new alternative (Alternative 5) which analyzed and disclosed the effects of selling 10 acres (more or less) of administrative land at 340 North Cache Street, retaining the street frontage for visibility, and therefore, the majority of the facilities in the short term. The proceeds from the sale would be used to remodel/expand several structures on that site, in addition to constructing new facilities at Nelson Drive Residential and Cottonwood Work Center administrative sites.

My decision is based on results and findings of the 2009 EA and the 2012 Supplement to the EA, a review of the Biological Assessment for Wildlife, the response to public comments on both

"A"

*Jackson Administrative Site Land Conveyance and Development Decision Notice*

analysis documents, and the Forest Plan. The EA (10/28/09) and the Supplement to the EA (01/27/12) are available for public review at the Supervisors Office located in Jackson, Wyoming. They are also located on the Forest Service website at http://www.fs.usda.gov/goto/btnf/projects.

This decision is to convey a portion of the North Cache administrative site and authorize facility development. This decision does not include the location of the Supervisors Office. That decision will be made separately and is not connected to the sale of administrative property and replacement/remodeling of certain facilities. The decision on location is a management decision and will be made at a later date.

## Decision

Based on the analysis of all five alternatives (EA and Supplement to the EA), I have selected a modified Alternative 5, which is a combination of Alternatives 3 and 5. The combination of these two alternatives best meets the Purpose and Need to convey portions of land no longer needed at the North Cache administrative site. The parcel configuration and acreage does not change what is shown in Alternative 5. Alternative 3 allows me to authorize three additional housing units at Nelson, beyond the ten disclosed in Alternative 5. The property will be conveyed under the authority of the *Forest Service Facilities Realignment and Enhancement Act of 2005* (FSFREA) (P.L. 109-54, 119 Stat. 559-563; 16 U.S.C. 580d, as amended). Funds generated will be used to remodel and expand the Administrative Office, warehousing, remodel the District Office into a bunkhouse at the North Cache site, and construct housing at Nelson Drive Residential and Cottonwood Work Center sites.

This decision will be implemented over time, and therefore, changes will likely not be immediate.

Specifically, I am authorizing:

**North Cache site (T. 41 N., R. 116 W., Sec. 27, NW1/4 SW1/4)** (see Figure 1.1)
- use of the Direct Sale authority to sell lands to the Town of Jackson;
- use of Competitive Sale authority to sell lands on the open market should the Direct Sale not be completed;
- conveyance of 10 acres more or less, and surplus buildings (car barn, gas house, fire storage, and fire crew office);
- retention of 5.3 acres more or less, and buildings along North Cache Street frontage and behind the current Supervisors Office;
- retention of the fire cache;
- reservation of access and utility easements (fiber, sewer, and electric) within the Mercill Street extension defined as a clause in the conveyance deed, by which the Grantor (USA, acting by and through the Forest Service) reserves to itself, some interest or right. In this case, retaining the right to use the road to access Forest Service property, and retaining access to those utilities providing service to the administrative site and buildings;

- reservation of utility easements (gas, electric, telephone, sewer) within the larger, eastern portion of the 10-acre conveyed land defined as a clause in the conveyance deed, by which the Grantor (USA, acting by and through the Forest Service) reserves to itself, some interest or right. In this case, retaining the right to continued use and access to those utilities servicing the administrative property and buildings;
- granting of easements for Cache Creek, sewer and gas corridors defined as a land adjustment transaction, whereby the Grantor (USA, acting by and through the Forest Service) conveys land or interests to a non-federal entity, or having the purchaser grant an easement at the time of closing. In this case, granting a right-of-way easement for the Cache Creek pipeline and the sewer pipeline to the Town of Jackson for operation and maintenance, and granting a right-of-way to Lower Valley Energy for operation and maintenance of the natural gas pipeline;
- remodeling/expansion of the Administration Office;
- expansion of warehousing;
- conversion of the District Office into a bunkhouse;
- removal and/or relocation of needed buildings from the conveyed parcel;
- removal of buildings no longer needed on the retained acreage.

**Nelson Drive Residential Site (T. 41 N., R. 116 W., Sec. 35, W1/2 NW1/4)**
(see Figure 1.2)
- up to 13 housing units, with associated amenities, constructed as multi-family complexes (could be apartments, condos, duplexes, triplexes, etc. or a combination of);
- construction within area of existing development and/or adjacent along the eastern boundary of development situated around the Putt-Putt trailhead.
- paving of street and Putt-Putt trailhead parking area surfaces.

**Cottonwood Work Center Site (T. 39 N., R. 116 W., unsurveyed Sec. 31, S1/2 SE1/4 SE1/4 and T. 38 N., R. 116 W., unsurveyed Sec. 6, NE1/4 NE1/4)**
(see Figure 1.3)
- up to 4 housing units, with associated amenities, constructed as multi-family complexes (could be apartments, condos, duplexes, triplexes, etc. or a combination of);
- one bunkhouse;
- pads and utilities for four manufactured homes.

*Jackson Administrative Site Land Conveyance and Development Decision Notice*

Figure 1.1: North Cache Administrative Site* (Figure 1.2 in the Supplement to the EA, page 11)



*Location of flood plain line corrected from original EA

Figure 1.2: Nelson Drive Residential* (Figure 1.3 in the Supplement to the EA, page 12)



*Location of trailhead corrected from original EA

<u>Jackson Administrative Site Land Conveyance and Development Decision Notice</u>

Figure 1.3: Cottonwood Administrative Site (Figure 1.4 in the original EA, page 12)



# Rationale

I focused on the administrative and operational aspects of the Forest, before making a decision to sell a portion of a Forest administrative site. I also considered how best to generate funds to maintain and/or replace facilities. My decision was based on review of the actual operations and my knowledge of how Forest Service operations work. The selected alternative provides for the best operational efficiencies possible taking into consideration current realities.

I determined the acreage and configuration of Forest administrative land no longer needed today or in the future for administrative or operational uses of resource management. I am choosing to sell administrative land no longer needed for Forest purposes under the authority of the FSFREA as a funding mechanism to reduce building maintenance, improve accessibility, and to increase energy efficiency through replacement and renovation of outdated, inefficient buildings, and to provide housing.

My decision has also been shaped in part by 1) the many scoping comments received from the public, key stakeholders, local governments, and federal government agencies who have participated, 2) discussions during public meetings, 3) review of real estate market studies, 4) conversations with industry specialists, 5) consideration of employee needs, 6) consideration for

5

*Jackson Administrative Site Land Conveyance and Development Decision Notice*

future managerial flexibility, and 7) comments received on both the EA and the Supplement to the EA.

A combination of Alternative 5 and Alternative 3 best allows me to retain facilities, remodel and/or expand, as well as, reduce the overall number of facilities, the maintenance backlog and costs associated with maintenance over a longer time period. The parcel configuration and acreage does not change what is shown in Alternative 5. Alternative 3 allows me to authorize three additional housing units at Nelson, beyond the ten disclosed in Alternative 5.

I have decided to utilize a Direct Sale as my preferred sales strategy. This would allow the Town of Jackson to retain the lands in public ownership for development of public purposes including open space. The *Town of Jackson 1994 Comprehensive Development Plan* and the soon to be adopted *2012 Comprehensive Plan* both zone this area as Public-Semi-Public (P-SP). The Town is completing a public involvement process, almost four years in the making, and this process has resulted in residents of Jackson identifying that this parcel be retained in public ownership along with adjacent public lands (the National Elk Refuge and Wyoming Department of Game and Fish property to the north, Teton County Recreation Center and Elementary School to the east, and associated parkland).

Public purposes identified in the Direct Sale application (dated January 17, 2012) proposed by the Town of Jackson include implementation of the Town's Comprehensive Plan by retaining this land in the Comprehensive Plan designation of Public-Semi Public. This designation generally would allow for addition to the street grid to reduce congestion; development of a transfer site for public transportation to surrounding federal lands; expansion of public parking for visitors and employees of public agencies; expansion of the Recreation Center; preservation of wetlands and open space; development of affordable housing; and development of a large multi-use gathering space.

Finally, by retaining the North Cache frontage, my decision allows the Forest Service to remain in a strong visible and accessible location for the community and for visitors travelling to the Town of Jackson and to Grand Teton and Yellowstone National Parks.

Assuming successful execution of the Direct Sale, the lands will be conveyed from federal ownership to the Town of Jackson by a Quit Claim Deed. The actual sale process will constitute administrative actions to implement this decision, and will be executed in full compliance with current Forest Service authorities, regulations and policies. The process or other details for completing a Direct Sale, therefore, are not part of this decision.

Should a Direct Sale to the Town of Jackson not be executed successfully, I will select my second option and will sell the same 10-acre parcel configuration by Competitive Sale on the open market. The actual Competitive Sale process will constitute administrative actions to implement this alternative, and will be executed in full compliance with current Forest Service sale authorities, regulations and policies. The process or other details for completing a Competitive Sale, therefore, are not part of this decision.

*Jackson Administrative Site Land Conveyance and Development Decision Notice*

Sale of a portion of the North Cache administrative site is consistent with the *1990 Bridger-Teton National Forest Land and Resource Management Plan*, and the *Facilities Master Plan* approved January, 2004, and amended September, 2009.

In summary, this decision will:
1. Convey out of federal ownership by use of Direct Sale to the Town of Jackson, a portion of the North Cache administrative site comprising a total of approximately 10 acres, using the authority of the FSFREA;
2. Alternately, convey out of federal ownership by use of Competitive Sale a portion of the North Cache administrative site comprising a total of approximately 10 acres, using the authority of the FSFREA should the Direct Sale not be completed;
3. Generate funds for facility replacement or remodeling; and thus improve energy and operational efficiencies;
4. Result in a reduction of total number of facilities at the North Cache site, and thus reduce the deferred maintenance backlog;
5. Retain a majority of the facilities at the North Cache site, resulting in fewer facilities being placed at either the Cottonwood Work Center or at Nelson Drive Residential site;
6. Continue to provide for customer service and visitor contact;
7. Retain fire fighting response;
8. Increase housing availability for permanent and seasonal employees.

In summary, the public benefits include reducing the cost of deferred maintenance by decreasing the number of buildings and maintenance backlog; providing accessible buildings that comply with all relevant laws and regulations; improving visitor access; reducing energy usage, and providing for increased housing for Forest Service employees.

I believe this decision best meets the immediate short term needs of today while also providing options that meet the long term needs of future managers.

## Other Alternatives Considered

Five alternatives were analyzed in detail. A summary of environmental and social effects can be found in the original EA on pages 40-41 and in the Supplement to the EA on pages 27-29.

### Alternative 1 *No Action*
The Bridger-Teton would not offer to sell any land at North Cache, and there would be no construction of facilities at North Cache, Cottonwood Work Center, or Nelson Drive Residential sites at this time. This alternative would not generate any funds for replacement of facilities. This alternative is required under the *National Environmental Policy Act* and FSFREA, and serves as a baseline from which to measure change comparing each action alternative. This alternative does not meet the purpose and need of this proposed action.

### Alternative 2 *Sell 7 Acres of Cache Frontage*
This alternative responds to the issue of selling the least amount of acreage, thus allowing as many facilities to be located at the North Cache site as possible. The Forest would retain all of

*Jackson Administrative Site Land Conveyance and Development Decision Notice*

the areas adjacent to the National Elk Refuge, and retain the entire wetland area. Seven acres of North Cache frontage along the south boundary would be authorized for sale; this is the site of the current Supervisors Office and multiple administrative buildings, warehouses, trailers, and employee-owned manufactured homes. This alternative was not selected as it is anticipated that it would not generate funds sufficient for replacement of all facilities in today's real estate market conditions. Further, the Forest would be without all facilities, except the Ranger District Office, immediately after execution of the deeds, and would be required to relocate to temporary facilities for a length of time during reconstruction. This alternative moved the fire cache to Cottonwood, which does not function as well as at the North Cache site. Finally, the Administrative Office would not be located in a visible location.

### Alternative 3 Sell 10 Acres, Full South Parcel

This alternative responds to the issue of selling an amount of land that has the potential to generate greater revenue by virtue of the larger amount of land being sold, based on access, visibility, size, and configuration, and the special 10-acre ordinance, known as the Planned Sub-Center District ordinance in the *Town of Jackson Comprehensive Plan*. Ten acres of the North Cache site would be authorized for sale; this includes the seven acres that would be sold under Alternative 2 plus three acres extending to the eastern edge of the site at the boundary common with the National Elk Refuge. The Forest would retain the northern portion, including a substantial area adjoining the National Elk Refuge. Eighteen additional housing units would be authorized at Nelson Residential site. This alternative was not selected as it is anticipated that it would not generate funds sufficient for replacement of all facilities in today's real estate market conditions. Further, the Forest would be without all facilities, except the Ranger District Office, immediately after execution of the deeds, and would be required to relocate to temporary facilities for a length of time during reconstruction. This alternative moved the fire cache to Cottonwood, which does not function as well as at the North Cache site. Finally, the Administrative Office would not be located in a visible location. However, I did select the portion of this alternative which relates to housing at Nelson Drive Residential site. Alternative 5 only allows for construction of up to 10 housing units (in multi-family buildings) inside the area of existing development, and this alternative allows for up to 18 housing units outside the area of development. My decision is to place up to 13 housing units (in multi-family buildings) at Nelson Drive Residential site, which will be located mostly within the area of existing development. However, when density becomes too tight, we will construct the remaining housing units outside the area of existing development, in and around the Putt-Putt trailhead.

### Alternative 4 Sell 10.4 Acres, Cache Frontage and North Parcel (Proposed Action).

This alternative is the closest to the original proposed action, Option B, presented in the scoping document. The parcel to be sold is configured to include North Cache frontage and the north parcel. The alternative responds to the issue of selling an amount of land that has the potential to generate greater revenue by virtue of the larger amount of land being sold, and the 10-acre Planned Sub-Center District ordinance in the *Town of Jackson Comprehensive Plan*. As with alternatives 2 and 3, this alternative was not selected as it is anticipated that it would not generate funds sufficient for replacement of all facilities in today's real estate market conditions. Further, the Forest would be without all facilities, except the Ranger District Office, immediately at the exchange of deed, and would be required to relocate to temporary facilities for a length of time during reconstruction. This alternative moved the fire cache to Cottonwood, which does not

8

*Jackson Administrative Site Land Conveyance and Development Decision Notice*

function as well as at the North Cache site. Finally, the Administrative Office would not be located in a visible location.

**Alternative 5** *Sell 10 Acres, North and East Parcel (Preferred Alternative).*

This alternative responds to the issue of retaining visibility for the Forest offices and the most facilities, while selling an amount of land that has the potential to generate greater revenue by virtue of the larger amount of land being sold, based on access, visibility, size, configuration, and the special 10-acre ordinance, known as the Planned Sub-Center District ordinance in the *Town of Jackson Comprehensive Plan*. The Forest would retain frontage on North Cache selling the north and east portions of the site adjoining the National Elk Refuge and access along the Mercill Street extension to the parcel.

Alternative 5 would result in the Forest retaining a majority of the facilities at the North Cache site, including the fire cache, and therefore, a need to relocate fewer facilities at the Cottonwood Work Center or Nelson Drive Residential sites. Ten acres of the North Cache site would be authorized for sale, including all lands on the north and east of this parcel at the boundary common to the National Elk Refuge, the recreation center/pool, and Kudor property on the southern boundary. By retaining the land, the Forest also retains the facilities which could be remodeled at a lesser cost than the cost of total new construction.

Alternative 5 allows for construction of multi-family buildings containing up to 10 single family housing units at Nelson Drive Residential site focused within or immediately adjacent to the 6.04 acres containing the existing development. In addition, the Putt-Putt trailhead would be upgraded.

Alternative 5 also allows for construction of multi-family housing of up to four housing units and one bunkhouse at the Cottonwood Work Center, and four pads for manufactured homes would be authorized at Cottonwood Work Center site. All development at Cottonwood would occur within the existing footprint, as in the original EA.

In all alternatives, the term "single family housing unit" as used in the original EA was meant to describe a unit where a family or individual would live. In the Supplement to the EA, the term was changed to multi-family housing unit. All new construction of permanent employee housing will be multi-family buildings containing more than one single family housing unit, such as condos, duplexes, triplexes, etc.

## Public and Employee Involvement

Forest employees were involved in the initial informational discussions of the FSFREA authority to sell administrative sites as a funding mechanism to replace outdated buildings and construct additional housing. Meetings with employees resulted in a collection of issues and concerns about process; the sale of land at North Cache; the various sites proposed for facility construction; the sites and the resources common to those landscapes; as well as, existing uses and function of those sites; and of course, timing of the sale and construction of the facilities.

*Jackson Administrative Site Land Conveyance and Development Decision Notice*

The project planning team included employees representing the employee-owned manufactured homes located at North Cache, natural and cultural resource specialists and Jackson District staff. Early involvement (2007-2008) by the employees aided the planning team in the development of several concepts to address the issues. The concepts were presented and comments taken at additional employee meetings. As the concepts evolved, a proposed action surfaced best addressing many of the issues and concerns.

Meetings were held specifically with the employee manufactured home owners. Field trips were taken to discuss potential sites, and the Forest housing policy was reviewed to discuss potential changes which might occur as a result of the sale of the land and potential relocations to new sites.

The proposal was first listed in the *Forest Schedule of Proposed Actions* in July, 2008. The proposal was provided to the public and other agencies for comment via a scoping document dated October 9, 2008. The Forest published the *Notice of Proposed Realty Action* in the *Jackson Hole News and Guide*, dated October 15, 2008, as a local notice required for land transactions. This proposed action included the sale of up to 11 acres of land at the North Cache site, retaining not less than 4 acres, and showed Option A and Option B as two possible configurations.

After the scoping letter was posted and interested publics began to call with questions, the Forest participated in a public meeting, sponsored by the East Jackson Network (the Network) on October 30, 2008 at the Senior Center, in Jackson. The loosely organized Network of residents interested and concerned about the recent flurry of growth in the East Jackson neighborhood hosted the meeting, and the Forest was invited as guest speaker. The Forest paid for newspaper advertisement, and the Network emailed the meeting invitation to members on their mailing list. In addition, the Forest employees walked door to door to inform residents within 3 to 4 blocks of the meeting. The meeting was also advertised in the local *Jackson Hole News and Guide/Daily* as an East Jackson Network meeting open to the general public. The presentation included the proposal and Options A and B, as described in the scoping document, delineating the land configuration to be sold and the portion(s) to be retained. The comments of the East Jackson meeting resulted in the creation of Alternative 2. The resulting recommendation was to retain the greatest amount of land and sell the least amount of land at the greatest return. The intent was to retain land sufficient in size on which to place as many facilities, including housing, as possible. At the conclusion of the meeting, the Forest offered to hold future design meetings, where interested neighbors could participate in the design of the housing development as a means of continuing the public involvement process.

Comments and letters were received from the scoping and legal notices and the East Jackson meetings. Interestingly, the public comments mirrored the comments developed by the Forest employees. Comments ranged from suggestion of other funding sources; to natural resource issues of wildlife, soil and water; to social issues of recreation, visuals, operational efficiency, and traffic; to process, alternative solutions, and opinions of housing types, density, size and color. Comments were received for each of the three administrative sites.

The Forest was also interested in what potential buyers, developers, and the real estate industry had to offer concerning the proposed action. The Forest contracted with General Services

*Jackson Administrative Site Land Conveyance and Development Decision Notice*

Administration, who subcontracted with Thompson, Cobb, Basilio and Associates (TCBA) to develop a meeting with this industry. A scoping meeting was held, specifically targeting the real estate market and potential buyers. On March 17, 2009, the Forest held a Real Estate Industry Forum, also open to the general public. The focus was on the real estate market, changing economic conditions, and the sale parcel configuration. The meeting was advertised in the local newspaper, *Jackson Hole News and Guide/Daily*, and posted on a nation-wide website created by TCBA specifically for those interested in attending the Real Estate Forum. Registration was requested, although was not a requirement of attendance. TCBA contracted with local design and real estate firms to better address the local market issues. Pierson Land Works and Jackson Hole Real Estate and Appraisal were the local firms.

The comments from the real estate participants resulted in the creation of Alternatives 3 and 4. The Real Estate Industry Forum suggested that 1) the land most likely to return the greatest revenue from the sale of land would be the parcel closest to North Cache; 2) the northern parcel, while most likely to be of value in the residential market, had a lesser likelihood of generating high revenue; 3) 10 acres provided the buyer/developer with a planning advantage under the Town's planning and zoning regulations, called Planned Sub-Center District (PSCD).

Also, the Forest, in partnership with the Town of Jackson and Teton County offered a request for proposals to aide in the design of Nelson Drive Residential area, as offered to the interested publics at the East Jackson meeting held on October 30, 2008. The Town of Jackson and Teton County provided startup funding, matched by the Forest through a *Challenge Cost Share Agreement* to contract for architectural and engineering design services. The Town offered a prospectus. Eight teams from across the country bid on the prospectus. Rendezvous Group was awarded the contract. Rendezvous Group included a group of local experts in the planning, resources, engineering, and design field. Rendezvous Engineering, Collins Planning Associates, Carney Architects, and Biota Research and Consulting comprised the team. Notices of the upcoming meetings were published in the *Jackson Hole News and Guide/Daily*. A series of three public meetings were held in 2009 on July 14th, 21st and 27th. The design question posed to the public assumed that all of the proposed housing would be located at the site. The challenge was to determine if all the housing could be located there, at what density, and whether or not the traffic, wildlife, and visual issues could be addressed with minimal impacts. The original proposed action called for developing an additional 6.7 acres of the Nelson Drive Residential site; the master plan developed by the public resulted in 3.03 acres of additional development. The process and outcome was presented in the form of a booklet and master plan by the Rendezvous Group to the Joint Information Meeting comprised of Teton County Commissioners and Town of Jackson Council members on July 28th. Comments by the interested publics who had participated in the design process were also presented to the Joint Information Meeting.

The Joint Information Meeting took the presentation into consideration and issued a Resolution, dated October 5, 2009, supporting the Bridger-Teton National Forest in maintaining the headquarters in Jackson, and for providing additional housing for recruiting and retaining employees at the Nelson Drive Residential site. The resolution supported future development in a manner which uses the smallest site footprint, is similar to the surrounding neighborhood in terms of density, and protects critical wildlife habitat.

*Jackson Administrative Site Land Conveyance and Development Decision Notice*

Comments received from the public, other agencies, the interdisciplinary team, and employees were used to develop a list of issues.

The Forest also received written comments (10/28/09 to 12/01/09) from an additional 65 responders to the original EA. All comments received during that timeframe remain as a part of the record. More importantly, those comments were also used to help shape Alternative 5 in the Supplement to the EA.

Some of the comments received refer to effects that were analyzed in the EA, such as the inefficiency of locating fire facilities at Cottonwood or the impact on employees who have to bear the expense of moving their manufactured homes. Some comments were outside the scope of the proposed action, including comments from people against the selling of federal land for any reason under any authority.

However, some respondents suggested changes that were not analyzed in the four original alternatives and are viable options under the changed conditions discussed on page 2 of the Supplement to the EA. Retaining the North Cache frontage, not replacing all facilities at once, allowing sale of land to another government agency in order to retain the land in public ownership, and increasing housing density on Nelson Drive rather than extending new development into the undeveloped area surrounding the Putt-Putt Trail are all examples of public input that the Forest has incorporated into Alternative 5.

The Forest received comments (02/01/12 to 3/01/12) from an additional 8 writers specifically on the Supplement to the EA. These comments include: 1) questioning the wisdom of separating the decision on whether or not to move the Supervisors Office (SO) from this analysis process since the amount of new housing needed is directly connected to whether or not future SO employees will be stationed in Jackson; 2) if the amount of funds generated is not sufficient to build/remodel all facilities needed, what is the priority for construction and where will additional funds come from; 3) it is still preferred that facilities should be funded by the normal congressional appropriation process, therefore Alternative 1 (No Action) should be the selected alternative; 4) support for selling the land to the Town of Jackson; 5) do not support a competitive sale to private parties; 6) support for the reduction of housing units and the increase in density within the original 6.04 acres (Alternative 5) and would like to be included in the design process when the time comes; 7) support for the SO staying in Jackson; 8) concern that Forest Service employees would move out of Teton County, Idaho if the SO moved to Alpine; 9) encourages the BTNF to consider locating cooperative offices with the Caribou-Targhee in Teton County, Idaho; 10) support retaining fire facilities at North Cache; 11) concern that the infrastructure at Cottonwood is insufficient for more development; 12) concern that the floodplain at North Cache is still covered by the Flood Insurance Rate Map (FIRM); 13) opposes building as many as 10 housing units at Nelson Drive and opposes building any units outside the current footprint; 14) partner with Jackson Hole Housing Trust to develop a long-term program to get BTNF employees into homes of their own at affordable prices; 15) encourage the co-location of cooperative offices between the Bridger-Teton and Caribou-Targhee Forests in Teton County, Idaho; 16) concern that additional BTNF land will be sold in the future if this project is allowed to go through; 17) if the SO moves to Alpine, additional housing would not be needed in Jackson and existing housing should be moved to Alpine. This extra cost should be considered when analyzing a move to Alpine.

*Jackson Administrative Site Land Conveyance and Development Decision Notice*

## Finding of No Significant Impact

After considering the environmental effects described in the EA and the Supplement to the EA, I have determined that these actions will not have a significant effect on the quality of the human environment considering the context and intensity of impacts (40 CFR 1508.27). The term 'significant' as used in the National Environmental Policy Act requires consideration of both context and intensity. The EA and Supplement analyzed the action in several contexts (human or national, affected region or interests, and locality). The context of the decision is to change the type and amount of development within existing areas of development, and within the guidelines of the *Teton County Comprehensive Plan*. The Forest also analyzed the severity of the action, both beneficial and adverse. Thus, an environmental impact statement will not be prepared. I base my finding on the following:

1. My finding of no significant environmental effects is not biased by the beneficial effects of the action. The beneficial and adverse impacts are disclosed in the EA and Supplement to the EA and no significant effects on the human environment have been identified. (See EA, pages 42-52, 65-100, and Supplement to the EA, pages 30-62.)

2. There are no hazards identified that are unusual or unique to this project. The health and safety hazards to Forest Service employees and contractors are addressed by the *USDA Forest Service Health and Safety Code* (Forest Service Handbook 6709.11), and by Occupational Health and Safety Administration requirements. All state and federal health and safety measures will be followed during the construction/remodeling of all facilities. (See EA, page 99.)

3. The Jackson Administrative Site Land Conveyance and Development Project area contains no unique characteristics or features. There are no park lands, prime farmlands, wild and scenic rivers, ecologically critical areas, congressionally designated areas (such as Wilderness, Wilderness Study Areas, or National Recreation Areas), Research Natural Areas, or municipal watersheds. There also are no inventoried roadless areas. The area does contain a small amount of floodplains and wetlands; however, the effects to these resources have been examined in the Environmental Assessment, and there is nothing noted about these features that would suggest that they are unique, or that associated effects would be significant. (See EA, page 99.)

4. The effects on the quality of the human environment are not likely to be highly controversial because there is no known scientific controversy over the impacts of the project. (See EA, page 100.)

5. We have considerable experience with the types of activities to be implemented. The effects analysis shows the effects are not uncertain, and do not involve unique or unknown risk. (See EA pages 42-52, 65-100, and Supplement to the EA, pages 30-62.)

6. The action is not likely to establish a precedent for future actions with significant effects, because no other administrative block of Forest Service land of similar size exists within

*Jackson Administrative Site Land Conveyance and Development Decision Notice*

the Town of Jackson limits; this parcel addresses a specific purpose and need; and any future proposals would need to go through a separate NEPA process.

7. The cumulative impacts are not significant. (See EA pages 45, 49, 65-67, 74, 80, 83, 90-91, 95, 97, and Supplement to the EA, pages 30, 43-53, 57-58, 61-62.)

8. The action will have no significant adverse effect on districts, sites, highways, structures, or objects listed in or eligible for listing in the National Register of Historic Places. No heritage resources that are eligible for the National Register are present in the area of the potential land sale or in any of the alternative locations for new facility construction. Both the Forest Archeologist and State Historic Preservation Office provided a statement supporting a No Effects Determination for the project. (See EA, pages 66-67 and State Historic Preservation Office letter in the project record.)

9. The action will have no effect on the threatened grizzly bear, Canada lynx, and gray wolf; and no effect on Designated Canada Lynx Critical Habitat. (See the Biological Assessment for this project and the Supplement to the EA pages 33-35 and 45-46.)

10. The action will not violate federal, state, and local laws or requirements for the protection of the environment. Applicable laws and regulations were considered in the EA. (See EA pages 97-100.) The Forest Plan does not provide direction regarding facility replacement at administrative sites. However, the Bridger-Teton's *Facilities Master Plan* (approved January, 2004, amended September, 2009) guides the acquisition, continued use, maintenance, upgrading, and the disposal of Forest Service facilities. (See EA page 3.)

## Findings Required By Law, Regulation, or Policy

**Clean Water Act of December 27, 1977 and Wyoming State Water Quality Standards:** By compliance with the *State of Wyoming Water Quality Standards and Best Management Practices*, I find that activities associated with my decision will comply with the *Clean Water Act* and Wyoming water quality standards.

**Executive Order 11990 of May 24, 1977:** This Executive Order (EO) requires the Forest Service to take action to minimize destruction, loss, or degradation of wetlands and to preserve and enhance the natural and beneficial values of wetlands. In compliance with this EO, Forest Service direction requires that analysis be completed to determine whether adverse impacts would result. Based on the Soil and Water Program Manager's report, my decision will have no adverse effects to wetlands located within the project area, and is in compliance with EO 11990.

**Executive Order 11988 of May 24, 1977:** This EO requires the Forest Service to provide leadership and take action to 1) minimize adverse effects associated with occupancy and modification of floodplains and reduce risk to flood loss; 2) minimize impacts of floods on human safety, health and welfare; and 3) restore and preserve natural and beneficial values served by floodplains. Based on the Forest Engineer and Soil and Water Program Manager's report my decision will have no adverse effects to floodplains.

*Jackson Administrative Site Land Conveyance and Development Decision Notice*

**Endangered Species Act (ESA) of December 28, 1973:** According to Section 7 of the ESA, federal agencies are directed to seek to conserve endangered and threatened species and to ensure that authorized actions are not likely to jeopardize the continued existence of any of these species. Biological assessments and biological evaluations were conducted for all federally proposed, threatened, endangered, and regionally designated, animals, plants, and fish. Based on the Forest Wildlife Biologist's reports, the U.S. Fish and Wildlife Service has concurred with the determinations that the project, as selected, will have "no effect" on the gray wolf, Canada lynx, and grizzly bear. These determinations are documented on pages 45-46 of the Supplement to the EA, in the Biological Assessment for this project and in the project file. Based on these findings, I have concluded that my decision is consistent with the ESA.

**National Historic Preservation Act (NHPA) of October 15, 1966; American Indian Religious Freedom Act (AIRFA) of August 11, 1978; and the Native American Graves Protection and Repatriation Act (NAGPRA) of November 16, 1990:** As outlined on pages 65-67 of the EA, a cultural resource review of the project area has determined that this project will not adversely affect any cultural resources. The Wyoming State Historic Preservation Office has concurred with the Forest Archeologist's report that this site and the buildings thereon do not meet the criteria necessary for listing on the National Register of Historic Places. Therefore, the sale of land and buildings will not cause the loss or destruction of significant scientific, cultural, or historical resources. I have concluded that my decision is consistent with the intent of the NHPA, the AIRFA, and the NAGPRA, and will have no effect on significant and eligible cultural resources.

**Executive Order 12898 of February 11, 1994 "Federal Actions to Address Environmental Justice on Minority Populations and Low Income Populations":** In accordance with EO 12898, an examination of the effects of the proposal on community composition was conducted to assess whether it would disproportionately impact minority or low-income populations, as outlined on pages 97-99 of the EA. No impacts to minority or low-income populations were identified during the scoping or effects analysis. I have concluded that my decision is in compliance with EO 12898.

**Executive Order 13186 of January 10, 2001** – This Executive Order relates to conservation of migratory bird species. My decision is in compliance with EO 13186 for the Conservation of Migratory Birds because the direct, indirect and cumulative impacts to migratory birds would be inconsequential (pages 52-54 in the Supplement to the EA).

**Executive Order 13112 of February 3, 1999** – This Executive Order directs that federal agencies should not authorize any activities that would increase the spread of invasive plant and animal species. This decision will not increase the spread of invasive species because prevention and treatment of invasive species will be conducted on all areas where soil has been disturbed in compliance with best management practices (page 87 of EA).

**American Antiquities Act of 1906 and the National Historic Preservation Act of 1966:** There would be no effects to any historic properties relative to this decision.

*Jackson Administrative Site Land Conveyance and Development Decision Notice*

**Prime Farmland, Rangeland and Forest Land (Secretary of Agriculture Memorandum 1827):** There are no prime farmlands or grazing allotments within the project area.

**Civil Rights Act of July 2, 1964:** Based on comments received during scoping and the comment period, there would be no adverse effects to groups or individuals protected under the federal *Civil Rights Act*.

**Federal Cave Resources Protection Act of November 19, 1988:** No caves are involved; therefore, this sale does not conflict with the intent of this Act.

**Comprehensive Environmental Response Compensation and Liability Act (CERCLA) of 1980:** The federal parcel has been examined for evidence of hazardous materials in accordance with CERCLA (42 U.S.C. 9601), as amended. No evidence was discovered indicating the likelihood of contamination on the federal parcel. The North Cache Site was remediated by the Wyoming Department of Environmental Quality (WDEQ) and URS Corporation (WDEQ's Engineer for the Jackson Leaking Underground Tank (LUST) Project). A letter from WDEQ to the Bridger-Teton National Forest dated October 7, 2004, documents the findings that off-site hydrocarbon contamination of the soil and groundwater at the site has attenuated to levels below WDEQ Restoration Standards, and the site has been removed from the LUST list and file closed. I have concluded that my decision is in compliance with CERCLA.

**Forest Service Facility Realignment and Enhancement Act of 2005 (FSFREA):** Section 504(d)(3) of Lead Based Paint and Asbestos - FSFREA exempts the agency from abatement of lead-based paint and asbestos, except those facilities being determined eligible for target housing as defined in U.S. Department of Housing and Urban Development, *Regulation on Controlling Lead-Based Paint Hazards in Housing Receiving Federal Assistance* and *Federally Owned Housing Being Sold* (36 CFR Part 35). No buildings are being sold meeting the definition of target housing. Compliance with FSFREA will involve proper disclosure procedures to be followed and indemnification language to perspective purchasers and in the Quit Claim Deed. I have concluded that my decision is in compliance with FSFREA.

**Conveyance of this administrative site was approved in fiscal year 2008 and updated in 2009 by Congress in the Appropriations bill.**

**Other Laws and Regulations:** The EA, Supplement to the EA and this Decision Notice were developed under the implementing regulations of the *National Environmental Policy Act* (NEPA), 40 CFR parts 1500-1508, 36 CFR 220, and 36 CFR 215. The project was also evaluated according to the implementing regulations of the *National Forest Management Act* (NFMA) 36 CFR 219 (http://ecfr.gpoaccess.gov). The Forest Plan does not provide direction regarding facility replacement on administrative sites. However, the *Bridger-Teton's Facilities Master Plan* (approved January, 2004, amended September, 2009) guides the acquisition, continued use, maintenance, upgrading and disposal of Forest Service facilities. I find that my decision is consistent with these two laws and their implementing regulations.

**Other Legislation:** This sale is in conformance with the *Noise Control Act, Clean Air Act*, and the *Farmlands Protection Policy Act*. This action will not significantly affect human or natural

resources. The effect of the decision will not differentially affect low income or minority populations and I have concluded that my decision is in compliance with these acts.

## Implementation Date

If no appeals are filed within the 45-day time period, implementation of the decision may occur on, but not before, 5 business days from the close of the appeal filing period. If appeals are filed, implementation may occur on, but not before, the 15th business day following the date of the last appeal disposition.

## Administrative Review or Appeal Opportunities

This decision is subject to administrative review (appeal) pursuant to 36 CFR Part 215. The appeal must be filed (regular mail, fax, email, hand-delivery, or express delivery) with the Appeal Deciding Officer:

> Harv Forsgren
> Regional Forester
> Attn: 1570 Appeals
> 324 25th Street
> Ogden, UT 84401

Appeals can also be filed electronically at: appeals-intermtn-regional-office@fs.fed.us.

The office business hours for those submitting hand-delivered appeals are 7:45 AM to 4:30 PM Monday through Friday, excluding holidays. Electronic appeals must be submitted in a format such as an email message, plain text (.txt), rich text format (.rtf), or Word (.doc). In cases where no identifiable name is attached to an electronic message, a verification of identity will be required. A scanned signature is one way to provide verification.

Appeals, including attachments, must be filed within 45 days from the publication date of the legal notice of this decision in the Casper Star-Tribune. Attachments received after the 45 day appeal period will not be considered. The publication date in the Casper Star-Tribune is the exclusive means for calculating the time to file an appeal. Those wishing to appeal this decision should not rely upon dates or timeframe information provided by any other source.

Individuals or organizations who submitted comments during the comment period specified at 215.6 may appeal this decision. The notice of appeal must meet the appeal content requirements at 36 CFR 215.14.

You will be eligible to appeal if you commented during either of the two comment periods: EA in 2009 or Supplement to the EA 2012.


*Jackson Administrative Site Land Conveyance and Development Decision Notice*

## Contact

For additional information concerning this decision or the Forest Service appeal process, contact Michael Schrotz, Team Leader, Bridger-Teton Supervisors Office, P. O. Box 1888, Jackson, WY 83001. Telephone: 307.739.5560. Email <mschrotz@fs.fed.us>

*[signature]*      5/4/12

JACQUELINE A. BUCHANAN      Date
Forest Supervisor
Bridger-Teton National Forest

The U.S. Department of Agriculture (USDA) prohibits discrimination in all its programs and activities on the basis of race, color, national origin, gender, religion, age, disability, age, disability, political beliefs, sexual orientation, or marital or family status. (Not all prohibited bases apply to all programs). Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write to USDA, Director, Office of Civil Rights, Room 326-W, Whitten Building, 14th and Independence Avenue, S.W., Washington, DC 20250-9410, or call (202) 720-5064 (voice and TDD). USDA is an equal opportunity provider and employer.