# EXHIBIT "C"

| | |
|---|---|
| Authorization ID: JAC545301<br>Contact Name: JACKSON HOLE COMMUNITY HOUSING TRUST<br>Expiration Date: 12/31/2054<br>Use Code: 351 | FS-2700-4 (09/2020)<br>OMB 0596-0082 |

## U.S. DEPARTMENT OF AGRICULTURE
## FOREST SERVICE

### SPECIAL USE PERMIT

Authority: ORGANIC ADMINISTRATION ACT June 4, 1897

JACKSON HOLE COMMUNITY HOUSING TRUST of 110 E BROADWAY AVE, 2ND FLOOR, PO BOX 4498, JACKSON, WY 83001 (hereinafter "the holder") is authorized to use or occupy National Forest System lands in the BRIDGER-TETON NATIONAL FOREST or Jackson Ranger District unit of the National Forest System, subject to the terms of this special use permit (the permit).

This permit covers 3.15 acres in the Sec. 35, T. 41 N., R. 116 W., 6TH PRINCIPAL MERIDIAN, ("the permit area"), as shown on the map attached as Appendix A. This and any other appendices to this permit are hereby incorporated into this permit.

This permit issued for the purpose of:

Construction, operation, and maintenance of a residential development at the Nelson Trailhead on the Jackson Ranger District of the Bridger-Teton National Forest. Development includes up to 14 buildings comprising 24 one-bedroom apartments (in triplexes) and 12 two-bedroom apartments (in duplexes) for a total of 36 units. Permit holder will offer U.S. Department of Agriculture Forest Service (Forest Service) permanent and seasonal employees the first option to lease 13 of the units. Units rented to Forest Service employees will be set at rates established by the federal Internet Quarters Management Information System (iQMIS), to be updated annually, and in no event shall the annual rates paid to permit holder be reduced if annual iQMIS rates are lowered.

A Memorandum of Understanding between the Forest Service and permit holder (Appendix B) outlines project phases and deliverables. The Operating Plan (Appendix C) described in Part III(D) of this authorization shall include the construction Plan of Development. Upon receipt of the first Certificate of Occupancy, permit holder shall update the Operating Plan to govern the operations of the property and management of the rental units. Appendix A may be updated to include finalized maps of the development.

If construction has not commenced within two (2) years of issuance of this permit, this permit shall terminate, unless a written justification for the delay is submitted and accepted by the authorized officer prior to the end of the three-year period and the authorized officer establishes a new timeframe in writing for commencing construction. Upon termination of this permit for failure to commence construction within two years of issuance of this permit, if the Forest Service determines that competitive interest exists in the use and occupancy authorized by this permit, issuance of a new permit will be subject to a competitive offering. If the permittee submits an application for a new permit as part of the competitive offering, the permittee shall be offered a new permit upon the best terms offered in the competitive offering.

I. GENERAL TERMS

A. AUTHORITY. This permit is issued pursuant to the ORGANIC ADMINISTRATION ACT June 4, 1897 and 36 CFR Part

"C"

251, Subpart B, as amended, and is subject to their provisions.

B. **AUTHORIZED OFFICER.** The authorized officer is the Forest or Grassland Supervisor, a District Ranger, or the Station, Institute, or Area Director with delegated authority pursuant to Forest Service Manual 2700.

C. **TERM.** This permit shall expire at midnight on 12/31/2054. Expiration of this permit shall not require notice, a decision document, or any environmental analysis or other documentation from the date of issuance.

D. **CONTINUATION OF USE AND OCCUPANCY.** This permit is not renewable. Prior to expiration of this permit, the holder may apply for a new permit for the use and occupancy authorized by this permit. Applications for a new permit must be submitted at least 6 months prior to expiration of this permit. Issuance of a new permit is at the sole discretion of the authorized officer. At a minimum, before issuing a new permit, the authorized officer shall ensure that (1) the use and occupancy to be authorized by the new permit is consistent with the standards and guidelines in the applicable land management plan; (2) the type of use and occupancy to be authorized by the new permit is the same as the type of use and occupancy authorized by this permit; and (3) the holder is in compliance with all the terms of this permit. The authorized officer may prescribe new terms when a new permit is issued.

E. **AMENDMENT.** This permit may be amended in whole or in part by the Forest Service when, at the discretion of the authorized officer, such action is deemed necessary or desirable to incorporate new terms that may be required by law, regulation, directive, the applicable forest land and resource management plan, or projects and activities implementing the land management plan pursuant to 36 CFR Part 218.

F. **COMPLIANCE WITH LAWS, REGULATIONS, AND OTHER LEGAL REQUIREMENTS.** In exercising the rights and privileges granted by this permit, the holder shall comply with all present and future federal laws and regulations and all present and future state, county, and municipal laws, regulations, and other legal requirements that apply to the permit area, to the extent they do not conflict with federal law, regulation, or policy. The Forest Service assumes no responsibility for enforcing laws, regulations, and other legal requirements that fall under the jurisdiction of other governmental entities.

G. **NON-EXCLUSIVE USE.** The use or occupancy authorized by this permit is not exclusive. The Forest Service reserves the right of access to the permit area, including a continuing right of physical entry to the permit area and the authorized facilities and improvements for inspection, monitoring, or any other purpose consistent with any right or obligation of the United States under any law or regulation. The Forest Service reserves the right to allow others to use the permit area in any way that is not inconsistent with the holder's rights and privileges under this permit, after consultation with all parties involved. Except for any restrictions that the holder and the authorized officer agree are necessary to protect the installation and operation of authorized temporary improvements, the lands and waters covered by this permit shall remain open to the public for all lawful purposes.

H. **ASSIGNABILITY.** This permit is not assignable or transferable.

I. **TRANSFER OF TITLE TO THE IMPROVEMENTS.**

1. *Notification of Transfer.* The holder shall notify the authorized officer when a transfer of title to all or part of the authorized improvements is planned.

2. *Transfer of Title.* Any transfer of title to the improvements covered by this permit shall result in termination of the permit. The party who acquires title to the improvements must submit an application for a permit. The Forest Service is not obligated to issue a new permit to the party who acquires title to the improvements. The authorized officer shall determine that the applicant meets requirements under applicable federal regulations.

J. **CHANGE IN CONTROL OF THE BUSINESS ENTITY.**

1. *Notification of Change in Control.* The holder shall notify the authorized officer when a change in control of the business entity that holds this permit is planned.

(a). In the case of a corporation, control is an interest, beneficial or otherwise, of sufficient outstanding voting securities or

capital of the business so as to permit the exercise of managerial authority over the actions and operations of the corporation or election of a majority of the board of directors of the corporation.

(b). In the case of a partnership, limited partnership, joint venture, or individual entrepreneurship, control is a beneficial ownership of or interest in the entity or its capital so as to permit the exercise of managerial authority over the actions and operations of the entity.

(c). In other circumstances, control is any arrangement under which a third party has the ability to exercise management authority over the actions or operations of the business.

2. Effect of Change in Control. Any change in control of the business entity as defined in paragraph 1 of this clause shall result in termination of this permit. The party acquiring control must submit an application for a special use permit. The Forest Service is not obligated to issue a new permit to the party who acquires control. The authorized officer shall determine whether the applicant meets the requirements established by applicable federal regulations.

## II. IMPROVEMENTS

A. LIMITATIONS ON USE. Nothing in this permit gives or implies permission to build or maintain any structure or facility or to conduct any activity, unless specifically authorized by this permit. Any use not specifically authorized by this permit must be proposed in accordance with 36 CFR 251.54 or 251.61. Approval of such a proposed use through issuance of a new permit or permit amendment is at the sole discretion of the authorized officer.

B. DRAWINGS. All drawings for development, layout, construction, reconstruction, or alteration of improvements in the permit area, as well as revisions to those drawings, must be prepared by a professional engineer, architect, landscape architect, or other qualified professional acceptable to the authorized officer. These drawings and drawing revisions must have written approval from the authorized officer before they are implemented. The authorized officer may require the holder to furnish as-built drawings, maps, or surveys upon completion of the work.

C. CONSTRUCTION. Any construction authorized by this permit shall commence by November of 2027 and shall be completed by November of 2029.

## III. OPERATIONS.

A. PERIOD OF USE. Use or occupancy of the permit area shall be exercised at least 365 days each year.

B. CONDITION OF OPERATIONS. The holder shall maintain the authorized improvements and permit area to standards of repair, orderliness, neatness, sanitation, and safety acceptable to the authorized officer and consistent with other provisions of this permit. Standards are subject to periodic change by the authorized officer when deemed necessary to meet statutory, regulatory, or policy requirements or to protect national forest resources.

C. USE OF NATIONAL FOREST SYSTEM ROADS AND NATIONAL FOREST SYSTEM TRAILS. The holder's use of National Forest System roads and National Forest System trails shall comply with applicable requirements in 36 CFR Part 212, Subpart A; 36 CFR Part 261, Subpart A; and orders issued under 36 CFR Part 261, Subpart B. Motor vehicle use shall be consistent with designations made under 36 CFR Part 212, Subpart B, unless specifically provided otherwise in the operating plan. Over-snow vehicle use shall be consistent with designations made under 36 CFR Part 212, Subpart C, unless specifically provided otherwise in the operating plan.

D. OPERATING PLAN. The holder shall prepare and annually revise by March 1, 2025 an operating plan. The operating plan shall be prepared in consultation with the authorized officer or the authorized officer's designated representative and shall cover all operations authorized by this permit. The operating plan shall outline steps the holder will take to protect public health and safety and the environment and shall include sufficient detail and standards to enable the Forest Service to monitor the holder's operations for compliance with the terms of this permit. The operating plan shall be submitted by the holder and approved in writing by the authorized officer or the authorized officer's designated representative prior to commencement of operations and shall be attached to this permit as an appendix. Any operating

plan revisions shall be submitted by the holder and approved in writing by the authorized officer or the authorized officer's designated representative before they are implemented. The authorized officer may require an annual meeting with the holder to discuss the terms of the permit or operating plan, annual use reports, or other concerns either party may have.

E. <u>MONITORING BY THE FOREST SERVICE</u>. The Forest Service shall monitor the holder's operations and reserves the right to inspect the permit area and authorized facilities and improvements at any time for compliance with the terms of this permit. The holder shall comply with inspection requirements deemed appropriate by the authorized officer. The holder's obligations under this permit are not contingent upon any duty of the Forest Service to inspect the permit area or authorized facilities or improvements. A failure by the Forest Service or other governmental officials to inspect is not a justification for noncompliance with any of the terms of this permit.

F. <u>CUTTING, DISPOSAL, AND PLANTING OF VEGETATION</u>. This permit does not authorize the cutting of trees, brush, shrubs, and other plants ("vegetation"). Vegetation may be cut, destroyed, or trimmed only after the authorized officer or the authorized officer's designated representative has approved in writing and marked or otherwise identified what may be cut, destroyed, or trimmed. The holder shall notify the authorized officer when approved cutting, destruction, or trimming of vegetation has been completed. The Forest Service shall determine in advance of felling the method of disposal of trees felled in the permit area that meet utilization standards. Disposal may be by sale or without charge per 36 CFR Part 223, as may be most advantageous to the United States. Debris from felling that does not meet utilization standards shall also be disposed of according to methods determined by the Forest Service. Planting of vegetation in the permit area must have prior written approval from the authorized officer.

## IV. RIGHTS AND LIABILITIES

A. <u>LEGAL EFFECT OF THE PERMIT</u>. This permit, which is revocable and terminable, is not a contract or a lease, but rather a federal license. The benefits and requirements conferred by this authorization are reviewable solely under the procedures set forth in 36 CFR 214 and 5 U.S.C. 704. This permit does not constitute a contract for purposes of the Contract Disputes Act, 41 U.S.C. 601. The permit is not real property, does not convey any interest in real property, and may not be used as collateral for a loan.

B. <u>VALID EXISTING RIGHTS</u>. This permit is subject to all valid existing rights. Valid existing rights include those derived under mining and mineral leasing laws of the United States. The United States is not liable to the holder for the exercise of any such right.

C. <u>ABSENCE OF THIRD-PARTY BENEFICIARY RIGHTS</u>. The parties to this permit do not intend to confer any rights on any third party as a beneficiary under this permit.

D. <u>NO WARRANTY OF ACCESS, SITE SUITABILITY, OR SERVICES</u>. This permit authorizes the use and occupancy of National Forest System lands by the holder for the purposes identified in this permit. The Forest Service does not make any express or implied warranty of access to the permit area, of the suitability of the permit area for the authorized uses, or for the furnishing of road or trail maintenance, water, fire protection services, search and rescue services, or any other services by a government agency, utility, association, or individual.

E. <u>RISK OF LOSS</u>. The holder assumes all risk of loss to the authorized improvements and all risk of loss of use and occupancy of the permit area, in whole or in part, due to public health and safety or environmental hazards. Loss to the authorized improvements and of use and occupancy of the permit area may result from but is not limited to theft, vandalism, fire and any fire-fighting activities (including prescribed burns), environmental contamination, avalanches, rising waters, winds, falling limbs or trees, and other forces of nature. If any authorized improvements are destroyed or substantially damaged, the authorized officer shall conduct an analysis to determine whether the improvements can be safely occupied in the future and whether rebuilding should be allowed. If rebuilding is not allowed, this permit shall terminate. If the authorized officer determines that the permit area cannot be safely occupied due to a public health or safety or environmental hazard, this permit shall terminate. Termination under this clause shall not give rise to any claim for damages, including lost profits and the value of the improvements, by the holder against the Forest Service.

F. <u>DAMAGE TO UNITED STATES PROPERTY</u>. The holder has an affirmative duty to protect from damage the land,

property, and other interests of the United States that are associated with the use and occupancy authorized by this permit. Damage includes but is not limited to destruction of or damage to National Forest System lands, fire suppression costs, and destruction of or damage to federally owned improvements.

1. The holder shall be liable for all injury, loss, or damage, including fire suppression costs, prevention and control of the spread of invasive species, and the costs of rehabilitation or restoration of natural resources, resulting from the holder's use and occupancy of the permit area. Compensation shall include but not be limited to the value of resources damaged or destroyed, the costs of restoration, cleanup, or other mitigation, fire suppression or other types of abatement costs, and all administrative, legal (including attorney's fees), and other costs. Such costs may be deducted from a performance bond required under clause IV.J.

2. The holder shall be liable for damage to all roads and trails of the United States caused by use of the holder or the holder's heirs, assignees, agents, employees, or contractors to the same extent as provided under clause IV.F.1, except that liability shall not include reasonable and ordinary wear and tear.

G. HEALTH AND SAFETY. The holder shall take all measures necessary to protect the health and safety of all persons affected by the use and occupancy authorized by this permit. The holder shall promptly abate as completely as possible and in compliance with all applicable laws and regulations any physical or mechanical procedure, activity, event, or condition existing or occurring in connection with the authorized use and occupancy during the term of this permit that causes or threatens to cause a hazard to the health or safety of the public or the holder's employees, agents, or contractors. The holder shall as soon as practicable notify the authorized officer of all serious accidents that occur in connection with these procedures, activities, events, or conditions. The Forest Service has no duty under the terms of this permit to inspect the permit area or operations of the holder for hazardous conditions or compliance with health and safety standards.

H. ENVIRONMENTAL PROTECTION.

1. Compliance with Environmental Laws. The holder shall in connection with the use and occupancy authorized by this permit comply with all applicable federal, state, and local environmental laws and regulations, including but not limited to those established pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), as amended, 42 U.S.C. 9601 et seq., the Resource Conservation and Recovery Act, as amended, 42 U.S.C. 6901 et seq., the Federal Water Pollution Control Act, as amended, 33 U.S.C. 1251 et seq., the Oil Pollution Act, as amended, 33 U.S.C. 2701 et seq., the Clean Air Act, as amended, 42 U.S.C. 7401 et seq., the Toxic Substances Control Act, as amended, 15 U.S.C. 2601 et seq., the Federal Insecticide, Fungicide, and Rodenticide Act, as amended, 7 U.S.C. 136 et seq., and the Safe Drinking Water Act, as amended, 42 U.S.C. 300f et seq.

2. Definition of Hazardous Material. For purposes of clause IV.H and section V, "hazardous material" shall mean (a) any hazardous substance under section 101(14) of CERCLA, 42 U.S.C. 9601(14); (b) any pollutant or contaminant under section 101(33) of CERCLA, 42 U.S.C. 9601(33); (c) any petroleum product or its derivative, including fuel oil, and waste oils; and (d) any hazardous substance, extremely hazardous substance, toxic substance, hazardous waste, ignitable, reactive or corrosive materials, pollutant, contaminant, element, compound, mixture, solution or substance that may pose a present or potential hazard to human health or the environment under any applicable environmental laws.

3. Oil Discharges and Release of Hazardous Materials. The holder shall immediately notify all appropriate response authorities, including the National Response Center and the authorized officer or the authorized officer's designated representative, of any oil discharge or of the release of a hazardous material in the permit area in an amount greater than or equal to its reportable quantity, in accordance with 33 CFR Part 153 and 40 CFR Part 302. For the purposes of this requirement, "oil" is as defined by section 311(a)(1) of the Clean Water Act, 33 U.S.C. 1321(a)(1). The holder shall immediately notify the authorized officer or the authorized officer's designated representative of any release or threatened release of any hazardous material in or near the permit area which may be harmful to public health or welfare or which may adversely affect natural resources on federal lands.

4. Remediation of Release of Hazardous Materials. The holder shall remediate any release, threat of release, or

discharge of hazardous materials that occurs in connection with the holder's activities in the permit area, including activities conducted by the holder's agents, employees, or contractors and regardless of whether those activities are authorized under this permit. The holder shall perform remediation in accordance with applicable law immediately upon discovery of the release, threat of release, or discharge of hazardous materials. The holder shall perform the remediation to the satisfaction of the authorized officer and at no expense to the United States. Upon revocation or termination of this permit, the holder shall deliver the site to the Forest Service in compliance with all applicable laws and regulations and free and clear of contamination.

I. **INDEMNIFICATION OF THE UNITED STATES**. The holder shall indemnify, defend, and hold harmless the United States for any costs, damages, claims, liabilities, and judgments arising from past, present, and future acts or omissions of the holder in connection with the use or occupancy authorized by this permit. This indemnification provision includes but is not limited to acts and omissions of the holder or the holder's heirs, assigns, agents, employees, or contractors in connection with the use or occupancy authorized by this permit which result in (1) violations of any laws and regulations which are now or which may in the future become applicable; (2) judgments, claims, demands, penalties, or fees assessed against the United States; (3) costs, expenses, and damages incurred by the United States; or (4) the release or threatened release of any solid waste, hazardous waste, hazardous materials, pollutant, contaminant, oil in any form, or petroleum product into the environment. The authorized officer may prescribe terms that allow the holder to replace, repair, restore, or otherwise undertake necessary curative actions to mitigate damages in combination with or as an alternative to monetary indemnification.

J. **BONDING**. The authorized officer may require the holder to furnish a surety bond or other security for any of the obligations imposed by the terms of this permit or any applicable law, regulation, or order.

1. As a further guarantee of compliance with the terms and conditions of this permit, the holder shall deliver and maintain a surety bond or other acceptable security, such as cash deposited and maintained in a federal depository or negotiable securities of the United States, in the amount of $15,000,000 for costs required to complete the residential housing development. The authorized officer may periodically evaluate the adequacy of the bond or other security and increase or decrease the amount as appropriate. If the bond or other security becomes unsatisfactory to the authorized officer, the holder shall within 30 days of demand furnish a new bond or other security issued by a surety that is solvent and satisfactory to the authorized officer. If the holder fails to meet any of the requirements secured under this clause, money deposited pursuant to this clause shall be retained by the United States to the extent necessary to satisfy the obligations secured under this clause, without prejudice to any other rights and remedies of the United States.

2. The bond shall be released or other security returned 30 days after (a) the authorized officer certifies that the obligations covered by the bond or other security are met and (b) the holder establishes to the satisfaction of the authorized officer that all claims for labor and material for the secured obligations have been paid or released.

3. The holder may be required to obtain additional bonding or security prior to undertaking additional construction or alteration not covered by the bond or other security or when the authorized improvements are to be removed and the permit area restored.

K. **STRICT LIABILITY**. The holder shall be strictly liable (liable without proof of negligence) to the United States up to the limit specified in 36 CFR 251.56(d)(2), as amended, per occurrence for any injury, loss, or damage arising in tort under this permit. Liability in tort for injury, loss, or damage to the United States exceeding the prescribed amount of strict liability in tort shall be determined under the law of negligence.

L. **INSURANCE**. The holder shall furnish proof of insurance, such as a certificate of insurance, to the authorized officer prior to issuance of this permit and each year thereafter that this permit is in effect. The Forest Service reserves the right to review the insurance policy and require any changes needed to ensure adequate coverage of the United States in connection with the authorized use and occupancy. The holder shall send an authenticated copy of any insurance policy obtained pursuant to this clause to the authorized officer immediately upon issuance of the policy. Any insurance policies obtained by the holder pursuant to this clause shall include the United States as an additional insured in an endorsement to the policy, and the additional insured provision shall provide for insurance coverage for the United States as required under this clause and to the extent of the full limits of insurance available to the holder. The holder shall give 30 days prior written notice to the authorized officer of cancellation of or any modification to the insurance policy. The certificate of

insurance, the authenticated copy of the insurance policy, and written notice of cancellation or modification of insurance policies should be sent to USDA Forest Service, Bridger-Teton National Forest, PO Box 1888, Jackson, WY 83001. Minimum amounts of coverage and other insurance requirements are subject to change at the sole discretion of the authorized officer on the anniversary date of this permit.

1. The holder shall have in force liability insurance covering losses, including those arising from strict liability, associated with the use or occupancy authorized by this permit arising from personal injury or death and third-party property damage in the minimum amount of $ 1,000,000 as a combined single limit per occurrence.

2. Depending on the holder's operations, the Forest Service may require the holder to demonstrate the availability of funds to address any release or threatened release of hazardous materials that may occur in connection with the holder's use or occupancy. Any requirements imposed would be established on a case-by-case basis by the authorized officer based on the degree of environmental risk from the holder's operations. The storage and use of normal maintenance supplies in nominal amounts generally would not trigger financial assurance requirements.

## V. RESOURCE PROTECTION

A. <u>WATER POLLUTION</u>. No waste or by-product shall be discharged into water in connection with the use and occupancy authorized by this permit except in full compliance with all applicable federal, state, and local environmental and other laws. Storage facilities for materials capable of causing water pollution, if accidentally discharged, shall be located so as to prevent any spillage into waters or channels leading into water except in full compliance with all applicable federal, state, and local environmental and other laws.

B. <u>SCENIC VALUES</u>. The holder shall protect the scenic values of the permit area and the adjacent land to the greatest extent possible during construction, operation, and maintenance of the authorized improvements.

C. <u>VANDALISM</u>. The holder shall take reasonable measures to prevent and discourage vandalism and disorderly conduct and when necessary shall contact the appropriate law enforcement officer.

D. <u>PESTICIDE USE</u>.

1. <u>Authorized Officer Concurrence</u>. Pesticides may not be used outside of buildings in the permit area to control pests, including undesirable woody and herbaceous vegetation (including aquatic plants), insects, birds, rodents, or fish without prior written concurrence of the authorized officer. Only those products registered or otherwise authorized by the U.S. Environmental Protection Agency and appropriate State authority for the specific purpose planned shall be authorized for use within areas on National Forest System lands.

2. <u>Pesticide-Use Proposal</u>. Requests for concurrence of any planned uses of pesticides shall be provided in advance using the Pesticide-Use Proposal (form FS-2100-2). Annually the holder shall, on the due date established by the authorized officer, submit requests for any new, or continued, pesticide usage. The Pesticide-Use Proposal shall cover a 12-month period of planned use. The Pesticide-Use Proposal shall be submitted at least 60 days in advance of pesticide application. Information essential for review shall be provided in the form specified. Exceptions to this schedule may be allowed, subject to emergency request and approval, only when unexpected outbreaks of pests require control measures which were not anticipated at the time a Pesticide-Use Proposal was submitted.

3. <u>Safety Plan</u>. Before applying pesticides in the permit area, the holder shall submit to the authorized officer a safety plan that includes, at a minimum, a precise statement of the treatment objectives; a description of the equipment, materials, and supplies to be used, including pesticide formulation, quantities, and application methods; a description of the lines of responsibility for project planning, project monitoring, and after-action review; a description of any necessary interagency coordination; a copy of the current Pesticide-Use Proposal for the permit; a description of the process by which treatment effectiveness will be determined; and a spill plan, communications plan, security plan, and when required by applicable local requirements, a provision for prior notification to sensitive individuals.

4. <u>Reporting</u>. By September 30th annually, the holder shall submit to the authorized officer a written report of each

pesticide application project completed during the previous 12-month period. The report shall contain information pertaining to the pesticide application projects as requested by the authorized officer.

5. Labeling, Laws, and Regulations. Label instructions and all applicable laws and regulations shall be strictly followed in the application of pesticides and disposal of excess materials and containers. No pesticide waste, excess materials, or containers shall be disposed of in any area administered by the Forest Service.

E. ARCHAEOLOGICAL AND PALEONTOLOGICAL DISCOVERIES. The holder shall immediately notify the authorized officer of all antiquities or other objects of historic or scientific interest, including but not limited to historic or prehistoric ruins, fossils, or artifacts discovered in connection with the use and occupancy authorized by this permit. The holder shall leave these discoveries intact and in place until otherwise directed by the authorized officer.

F. NATIVE AMERICAN GRAVES PROTECTION AND REPATRIATION ACT (NAGPRA). In accordance with 25 U.S.C. 3002(d) and 43 CFR 10.4, if the holder inadvertently discovers human remains, funerary objects, sacred objects, or objects of cultural patrimony on National Forest System lands, the holder shall immediately cease work in the area of the discovery and shall leave the discoveries intact and in place. The holder shall follow the applicable NAGPRA protocols for the undertaking provided in the NAGPRA plan of action or the NAGPRA comprehensive agreement; if there are no such agreed-upon protocols, the holder shall as soon as practicable notify the authorized officer of the discovery and shall follow up with written confirmation of the discovery. The activity that resulted in the inadvertent discovery may not resume until 30 days after the authorized officer certifies receipt of the written confirmation, if resumption of the activity is otherwise lawful, or at any time if a NAGPRA plan of action has been executed by the Forest Service following tribal consultation and any preconditions have been met.

G. PROTECTION OF THREATENED AND ENDANGERED SPECIES, SENSITIVE SPECIES, AND SPECIES OF CONSERVATION CONCERN AND THEIR HABITAT.

1. Threatened and Endangered Species and Their Habitat. The location of sites within the permit area needing special measures for protection of plants or animals listed as threatened or endangered under the Endangered Species Act (ESA) of 1973, 16 U.S.C. 1531 et seq., as amended, or within designated critical habitat shall be shown on a map in an appendix to this permit and may be shown on the ground. The holder shall take any protective and mitigation measures specified by the authorized officer as necessary and appropriate to avoid or reduce effects on listed species or designated critical habitat affected by the authorized use and occupancy. Discovery by the holder or the Forest Service of other sites within the permit area containing threatened or endangered species or designated critical habitat not shown on the map in the appendix shall be promptly reported to the other party and shall be added to the map.

2. Sensitive Species and Species of Conservation Concern and Their Habitat. The location of sites within the permit area needing special measures for protection of plants or animals designated by the Regional Forester as sensitive species or as species of conservation concern pursuant to FSM 2670 shall be shown on a map in an appendix to this permit and may be shown on the ground. The holder shall take any protective and mitigation measures specified by the authorized officer as necessary and appropriate to avoid or reduce effects on sensitive species or species of conservation concern or their habitat affected by the authorized use and occupancy. Discovery by the holder or the Forest Service of other sites within the permit area containing sensitive species or species of conservation concern or their habitat not shown on the map in the appendix shall be promptly reported to the other party and shall be added to the map.

H. CONSENT TO STORE HAZARDOUS MATERIALS. The holder shall not store any hazardous materials at the site without prior written approval from the authorized officer. This approval shall not be unreasonably withheld. If the authorized officer provides approval, this permit shall include, or in the case of approval provided after this permit is issued, shall be amended to include specific terms addressing the storage of hazardous materials, including the specific type of materials to be stored, the volume, the type of storage, and a spill or release prevention and control plan. Such terms shall be proposed by the holder and are subject to approval by the authorized officer.

1. If the holder receives consent to store hazardous material, the holder shall identify to the Forest Service any hazardous material to be stored at the site. This identifying information shall be consistent with column (1) of the table of hazardous materials and special provisions enumerated at 49 CFR 172.101 whenever the hazardous material appears in that table.

For hazard communication purposes, the holder shall maintain Material Safety Data Sheets for any stored hazardous chemicals, consistent with 29 CFR 1910.1200(c) and (g). In addition, all hazardous materials stored by the holder shall be used, labeled, stored, transported, and disposed of in accordance with all applicable federal, state, and local laws and regulations. Any hazardous material transportation and disposal manifests shall clearly identify the holder as the generator of the hazardous waste.

2. If hazardous materials are used or stored at the site, the authorized officer may require the holder to deliver and maintain a surety bond in accordance with clause IV.J.

3. The holder shall not release any hazardous material onto land or into rivers, streams, impoundments, or natural or man-made channels leading to them. All prudent and safe attempts must be made to contain any release of these materials. The authorized officer in charge may specify specific conditions that must be met, including conditions more stringent than federal, state, and local regulations, to prevent releases and protect natural resources.

4. If the holder uses or stores hazardous materials at the site, upon revocation or termination of this permit the holder shall provide the Forest Service with a report certified by a professional or professionals acceptable to the Forest Service that the permit area is uncontaminated by the presence of hazardous materials and that there has not been a release or discharge of hazardous materials upon the permit area, into surface water at or near the permit area, or into groundwater below the permit area during the term of the permit. If a release or discharge has occurred, the professional or professionals shall document and certify that the release or discharge has been fully remediated and that the permit area is in compliance with all applicable federal, state, and local laws and regulations.

VI. LAND USE FEE AND DEBT COLLECTION

A. LAND USE FEES. The holder's land use fee has been waived pursuant to 36 CFR 251.57 and Forest Service Handbook 2709.11, Chapter 30. The authorized officer reserves the right to review the land use fee waiver determination periodically and to charge all or part of the land use fee if the waiver is no longer appropriate.

VII. REVOCATION, SUSPENSION, AND TERMINATION

A. REVOCATION AND SUSPENSION.

1. The authorized officer may revoke or suspend this permit in whole or in part:

(a) For noncompliance with federal, state, or local law;

(b) For noncompliance with the terms of this permit;

(c) For abandonment or other failure of the holder to exercise the privileges granted; or

(d) At the discretion of the authorized officer, for specific and compelling reasons in the public interest.

2. The authorized officer may revoke this permit at the request of the holder. Revocation at the request of the holder must be agreed to in writing by the authorized officer. As a condition of revocation of this permit at the request of the holder, the authorized officer has discretion to impose any terms deemed appropriate as provided for in this permit.

3. Prior to revocation or suspension, other than revocation at the request of the holder under clause VII.A.2 and immediate suspension under clause VII.B, the authorized officer shall give the holder written notice of the grounds for revocation or suspension and a reasonable period, typically not to exceed 90 days, to cure any noncompliance.

B. IMMEDIATE SUSPENSION. The authorized officer may immediately suspend this permit in whole or in part when necessary to protect public health or safety or the environment. The suspension decision shall be in writing. The holder may request an on-site review with the authorized officer's supervisor of the adverse conditions prompting the suspension. The authorized officer's supervisor shall grant this request within 48 hours. Following the on-site review, the authorized officer's superior shall promptly affirm, modify, or cancel the suspension.

C. **APPEALS AND REMEDIES**. Written decisions by the authorized officer relating to administration of this permit are subject to administrative appeal pursuant to 36 CFR Part 214, as amended. Revocation or suspension of this permit shall not give rise to any claim for damages by the holder against the Forest Service.

D. **TERMINATION**. This permit shall terminate when by its terms a fixed or agreed upon condition, event, or time occurs without any action by the authorized officer. Examples include but are not limited to expiration of the permit by its terms on a specified date and, in the case of a permit issued to a business entity, termination upon change of control of the business entity. Termination of this permit shall not require notice, a decision document, or any environmental analysis or other documentation. Termination of this permit is not subject to administrative appeal and shall not give rise to any claim for damages by the holder against the Forest Service.

E. **RIGHTS AND RESPONSIBILITIES UPON REVOCATION OR TERMINATION WITHOUT ISSUANCE OF A NEW PERMIT**. Upon revocation or termination of this permit without issuance of a new permit, the holder shall remove all structures and improvements, except those owned by the United States, within a reasonable period prescribed by the authorized officer and shall restore the site to the satisfaction of the authorized officer. If the holder fails to remove all structures and improvements within the prescribed period, they shall become the property of the United States and may be sold, destroyed, or otherwise disposed of without any liability to the United States. However, the holder shall remain liable for all costs associated with their removal, including costs of sale and impoundment, cleanup, and restoration of the site.

F. **CONTINUATION OF OBLIGATIONS AND LIABILITIES BEYOND TERMINATION OR REVOCATION**. Notwithstanding the termination or revocation of this permit, its terms shall remain in effect and shall be binding on the holder and the holder's personal representative, successors, and assignees until all the holder's obligations and liabilities accruing before or as a result of termination or revocation of this permit have been satisfied.

## VIII. MISCELLANEOUS PROVISIONS

A. **MEMBERS OF CONGRESS**. No member of or delegate to Congress or resident commissioner shall benefit from this permit either directly or indirectly, except to the extent the authorized use provides a general benefit to a corporation.

B. **CURRENT ADDRESSES**. The holder and the Forest Service shall keep each other informed of current mailing addresses, including those necessary for billing and payment of land use fees.

C. **SUPERSEDED AUTHORIZATION**. This permit supersedes a special use authorization designated n/a.

D. **SUPERIOR CLAUSES**. If there is a conflict between any of the preceding printed clauses and any of the following clauses, the preceding printed clauses shall control.

E. **Noxious Weed/Exotic Plant Prevention and Control** (R4-D3).

The holder shall be responsible for the prevention and control of noxious weeds and/or exotic plants of concern on the area authorized by this authorization and shall provide prevention and control measures prescribed by the Forest Service. Noxious weeds/exotic plants of concern are defined as those species recognized by (county weed authority/national forest) in which the authorized use is located.

The holder shall also be responsible for prevention and control of noxious weed/exotic plant infestations which are not within the authorized area, but which are determined by the Forest Service to have originated within the authorized area.

When determined to be necessary by the authorized officer, the holder shall develop a site-specific plan for noxious weed/exotic plant prevention and control. Such plan shall be subject to Forest Service approval. Upon Forest Service approval, the noxious weed/exotic plant prevention and control plan shall become a part of this authorization, and its provisions shall be enforceable under the terms of this authorization.

F. **Grizzly Bear Protection** (R4-D5).

This special use authorization includes land which is part of the habitat of the grizzly bear. Therefore, in compliance with Forest Service responsibilities under the Endangered Species Act of 1973, 16 U.S.C. 1531, the following conditions apply to this special use authorization:

a. The Forest Service Authorized Officer may order an immediate temporary suspension of all human activities permitted by this authorization and, if needed, revoke the special use authorization when, in his/her judgment, such action is necessary in order to prevent confrontation or conflict between humans and grizzly bears. The holder shall immediately comply with such order. The United States shall not be liable for any consequences from such a suspension or revocation. Suspension or revocation, may be appealed to the next higher level, as provided in Secretary of Agriculture Regulations.

b. The holder, his/her agents, employees, contractors, and subcontractors will comply with the requirements of the attached Grizzly Bear Management and Protection Plan dated <current> in the conduct of any and all activities authorized. The Forest Service Authorized Officer may review and revise the plan as needed.

c. The holder assumes full responsibility and shall hold the United States harmless from any and all claims by him/her or by third parties for any damages to life or property arising from the activities authorized by this special use authorization and encounters with grizzly bears, or from suspension or revocation of activities authorized by this special use authorization.

d. Intentional or negligent acts by the holder, his/her agents, employees, contractors, and subcontractors that result in injury or death of a grizzly bear will be cause for revocation of this authorization in whole or in part.

e. Failure to comply with provisions a, b, or c may result in suspension or revocation, of this authorization in whole or in part, and may cause criminal action to be taken against the holder under provisions of the Endangered Species Act of 1973, as amended, or other applicable authority.

The Grizzly Bear Management and Protection Plan provided for in paragraph b above will, as a minimum, address the following:

a. Camp locations and period of time each location is to be used.
b. Areas to avoid or enter, by type of activities, schedule.
c. Seasonal or other human activity limitations.
d. Livestock and Pets: 1) by location; 2) numbers: 3) types (horses, dogs, and so forth); and 4) treatment of carcasses.
e. Food Storage: 1) livestock and pets; and 2) human.
f. Food preparation and cleanup.
g. Garbage and Refuse Disposal: 1) livestock and pets; and 2) human.
h. Storage of game meat, if applicable.
i. Suggestions for minimizing direct conflict.
j. Human safety.

G. Nondiscrimination (B-1).

1. The holder and its employees shall not discriminate against any person on the basis of race, color, sex (in educational and training activities), national origin, age, or disability or by curtailing or refusing to furnish accommodations, facilities, services, or use privileges offered to the public generally. In addition, the holder and its employees shall comply with the provisions of Title VI of the Civil Rights Act of 1964 as amended, section 504 of the Rehabilitation Act of 1973, as amended, Title IX of the Education Amendments of 1972, as amended, and the Age Discrimination Act of 1975, as amended.

2. The holder shall include and require compliance with the above nondiscrimination provisions in any third-party agreement made with respect to the operations authorized under this permit.

3. Signs setting forth this policy of nondiscrimination to be furnished by the Forest Service shall be conspicuously

displayed at the public entrance to the permit area, and at other exterior or interior locations as directed by the Forest Service.

4. The Forest Service shall have the right to enforce the foregoing nondiscrimination provisions by suit for specific performance or by any other available remedy under the laws of the United States or the State in which the violation occurs.

H. <u>Removal and Planting of Vegetation and Other Resources</u> (D-5).

This permit does not authorize the cutting of timber or other vegetation. Trees or shrubbery may be removed or destroyed only after the Authorized Officer or the Authorized Officer's designated representative has approved in writing and marked or otherwise identified what may be removed or destroyed. Timber cut or destroyed shall be paid for at current stumpage rates for similar timber in the Bridger-Teton National Forest. The Forest Service reserves the right to dispose of the merchantable timber to those other than the holder at no stumpage cost to the holder. Unmerchantable material shall be disposed of as directed by the Authorized Officer. Trees, shrubs, and other plants may be planted within the permit area with prior written approval of the Authorized Officer.

I. <u>Ground Surface Protection and Restoration</u> (D-9).

The holder shall prevent and control soil erosion and gullying on National Forest System lands in and adjacent to the permit area resulting from construction, operation, maintenance, and termination of the authorized use. The holder shall construct authorized improvements so as to avoid accumulation of excessive amounts of water in the permit area and encroachment on streams. The holder shall revegetate or otherwise stabilize (for example, by constructing a retaining wall) all ground where the soil has been exposed as a result of the holder's construction, maintenance, operation, or termination of the authorized use.

J. <u>Signs</u> (X-29).

Signs or advertising posted on National Forest System lands shall be subject to prior written approval of the authorized officer as to location, design, size, color, and content. Erected signs shall be maintained to standards determined by the Forest Service.

THIS PERMIT IS ACCEPTED SUBJECT TO ALL ITS TERMS.

BEFORE THIS PERMIT IS ISSUED TO AN ENTITY, DOCUMENTATION MUST BE PROVIDED TO THE AUTHORIZED OFFICER OF THE AUTHORITY OF THE SIGNATORY FOR THE ENTITY TO BIND IT TO THE TERMS OF THIS PERMIT.

ACCEPTED:

_[signature: Anne Cresswell]_     11-20-25

ANNE CRESSWELL, Executive Director    SIGNATURE    DATE
Jackson Hole Community Housing Trust

APPROVED:

_[signature: Chad E. Hudson]_     11/21/2025

CHAD E. HUDSON    SIGNATURE    DATE
Forest Supervisor
Bridger-Teton National Forest
USDA Forest Service

According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0596-0082. Response to this collection of information is mandatory. The authority to collect the information is the Organic Administration Act, 16 U.S.C. 551. The time required to complete this information collection is estimated to average 1 hour per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.

In accordance with Federal civil rights law and U.S. Department of Agriculture (USDA) civil rights regulations and policies, the USDA, its Agencies, offices, and employees, and institutions participating in or administering USDA programs are prohibited from discriminating based on race, color, national origin, religion, sex, disability, age, marital status, family/parental status, income derived from a public assistance program, political beliefs, or reprisal or retaliation for prior civil rights activity, in any program or activity conducted or funded by USDA (not all bases apply to all programs). Remedies and complaint filing deadlines vary by program or incident.

Persons with disabilities who require alternative means of communication for program information (e.g., Braille, large print, audiotape, American Sign Language, etc.) should contact the State or local Agency that administers the program or contact USDA through the Telecommunications Relay Service at 711 (voice and TTY). Additionally, program information may be made available in languages other than English.

To file a program discrimination complaint, complete the USDA Program Discrimination Complaint Form, AD-3027, found online at How to File a Program Discrimination Complaint and at any USDA office or write a letter addressed to USDA and provide in the letter all of the information requested in the form. To request a copy of the complaint form, call (866) 632-9992. Submit your completed form or letter to USDA by: (1) mail: U.S. Department of Agriculture, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, SW, Mail Stop 9410, Washington, D.C. 20250-9410; (2) fax: (202) 690-7442; or (3) email: program.intake@usda.gov.

USDA is an equal opportunity provider, employer, and lender.

The Privacy Act of 1974 (5 U.S.C. 552a) and the Freedom of Information Act (5 U.S.C. 552) govern the confidentiality to be provided for information received by the Forest Service.