Tyler J. Garrett, WSB #6-4400
Brent R. Rhodes, WSB #7-6494
HATHAWAY & KUNZ, LLP
2515 Warren Avenue, Suite 500
P.O. Box 1208
Cheyenne, WY  82003-1208
Phone:  307-634-7723
Fax:  307-634-0985
tgarrett@hkwyolaw.com
brhodes@hkwyolaw.com

ATTORNEYS FOR JACKSON HOLE COMMUNITY HOUSING TRUST

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| MICHAEL J. CLEMENT, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>UNITED STATES DEPARTMENT OF )<br>AGRICULTURE FOREST SERVICE )<br>BRIDGER-TETON NATIONAL FOREST )<br>SUPERVISOR CHAD HUDSON, and )<br>)<br>JACKSON HOLE COMMUNITY )<br>HOUSING TRUST, )<br>)<br>Defendants. ) | Civil No. 2:26-cv-1-ABJ |

## JACKSON HOLE COMMUNITY HOUSING TRUST'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

Defendant Jackson Hole Community Housing Trust ("the Trust"), by and through counsel, Hathaway & Kunz, LLP, provides the following *Memorandum* in support of its *Motion to Dismiss* filed concurrently herewith. In support of this *Memorandum*, the Trust state as follows:

### Background

In the context of a motion to dismiss, the Court is to accept the well-pleaded facts in the complaint as true and views them in a light favorable to the plaintiff. *Clinton v. Sec. Benefit Life*

*Ins. Co.*, 63 F.4th 1264, 1274 (10th Cir. 2023). The following facts are found within the *Complaint* [ECF No. 1] and documents attached thereto, and as such the recital of facts below may be appropriately considered by the Court in its analysis. *Renken v. Builders Transportation Co., LLC*, No. 10-CV-57-J, 2010 WL 11450501, at *1 (D. Wyo. July 16, 2010 - ABJ) (considering facts alleged in complaint and granting motion to dismiss).

In 2009, the Bridger-Teton National Forest ("BTNF") completed an environmental assessment ("EA") to analyze and disclose effects of four alternatives for selling administrative land at 340 North Cache Street, Jackson, Wyoming, and for developing facilities at North Cache, Nelson Drive Residential and Cottonwood Work Center administrative sites. (ECF No. 1-4 pp 1). The present dispute concerns the Nelson Drive Residential administrative site ("Nelson Location"). The proceeds from the sale of the administrative land at 340 North Cache Street were to be used, *inter alia*, to construct new facilities at the Nelson Location. (*Id.*). For various reasons, no decision was made after the 2009 EA was released to the public and BTNF completed a supplement to the EA in 2012. (*Id.*)

Concerning the Nelson Location – based on the 2009 EA and its 2012 supplement – the BTNF Supervisor released a *Decision Notice & Finding of No Significant Impact* ("FONSI"). (*Id.*). Within the FONSI, the Supervisor evaluated five "alternative" courses of action. The alternatives ranged from taking no action, to selling the most acreage possible and building 18 housing units at and around the Nelson Location. (*Id.* at pp 7-9). Ultimately, the Supervisor selected a modified Alternative 5, which is a combination of Alternatives 3 and 5. (*Id.* at pp 2). Instead of Alternative 3's proposed 18 units, and instead of Alternative 5's proposed 10 units, the BTNF Supervisor authorized, "up to 13 housing units, with associated amenities, constructed as multi-family complexes (could be apartments, condos, duplexes, triplexes, etc. or a combination of);

construction within area of existing development and/or adjacent along the eastern boundary of development situated around the Putt-Putt trailhead[; and] paving of street and Putt-Putt trailhead parking area surfaces." (*Id*. at pp 3).

The rationale for the Supervisor's decision was to sell a portion of the Cache Street administrative land no longer needed for BTNF purposes to the Town of Jackson as a funding mechanism to reduce building maintenance, improve accessibility, and to increase energy efficiency through replacement and renovation of outdated, inefficient buildings, and to provide needed housing. (*Id*. at pp 5). By retaining a majority of the facilities at 340 North Cache Street, BTNF then would require fewer facilities be placed at either the Cottonwood Work Center site or at the Nelson Location. (*Id*. at pp 7). Proper public notice and comment were had before BTNF's Supervisor released her FONSI, and no appeal or court action otherwise arose from the Supervisor's decision. (*Id*. at pp 9-12)

In September of 2025, Defendant Chad Hudson ("Mr. Hudson"), the then BTNF Supervisor, reviewed the 2012 decision and noted that the current site and design plans for the housing project at the Nelson Location proposed 14 units – a single unit more than approved in the 2012 FONSI – but within a smaller footprint than originally planned. (ECF No. 1-5 at pp. 1). Mr. Hudson determined that this single additional unit allowed for greater employee occupancy and partnership opportunities with a local non-profit housing organization. (*Id*.). That local non-profit discussed therein is the Trust.

The reasoning for the additional unit was that since the time of the 2012 FONSI's issuance, greater need has arisen for affordable and stable housing for Forest Service employees in the Jackson area. (*Id*. at pp. 2). Mr. Hudson found that the previous Supervisor most seriously considered Alternatives 3 and 5, which allowed between 10 to 18 units. (*Id*. at pp. 2). Because the

previous Supervisor chose a modified Alternative 5, thereby allowing up to 13 units, and because Mr. Hudson based his determination on almost identical lines, he found that one additional housing unit was within the range of the two alternatives considered, analyzed, and used for the basis of the previous Supervisor's decision. Ultimately, Mr. Hudson found that the proposed change in number of housing units from 13 to 14 within a smaller ecological footprint did not change the original FONSI and that the increase would likewise not have a reasonably foreseeable significant impact. (*Id.*).

Accordingly, a Special Use Permit ("SUP") was granted to the Trust in November of 2025. (ECF No. 1-6). The SUP allows the Trust to construct, operate, and maintain a residential development of 14 buildings at the Nelson Location comprising of 24 one-bedroom apartments and 12 two-bedroom apartments. (*Id.*). Of those, Forest Service employees are given first options to lease 13 of the apartments at a fixed rate. (*Id.*). Ultimately, Mr. Hudson did not expand the project beyond the decision framework established by the 2009 EA and the 2012 supplement. Rather, he identified a site/design refinement that included a single additional unit while reducing the project's overall footprint. The result is stable, predictable housing for Forest Service employees and additional affordable housing capacity for the broader Jackson community, while reducing the ecological footprint of the originally approved housing plan. And critically, Mr. Hudson concluded the refinement remained within the scope of the alternatives analyzed and the impacts disclosed in the prior EA, its supplement, and the FONSI, such that no new or different significant impacts were reasonably foreseeable.

## Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), the complaint must allege facts that "state a claim to relief that is plausible on its face." *Clinton,* 63 F.4th at 1274; *Renken*, 2010 WL

11450501, at *2. The plausibility standard requires the plaintiff to "plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1144 (10th Cir. 2023) (internal quotations omitted). The Court accepts the well-pleaded facts in the complaint as true and views them in a light favorable to the plaintiff, but "need not accept threadbare recitals of the elements of a cause of action that are supported by mere conclusory statements, or allegations plainly contradicted by properly considered documents or exhibits." *Clinton*, 63 F.4th at 1275. In reviewing a motion to dismiss under Rule 12(b)(6), the Court may consider "documents attached to or referenced in the complaint if they are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017).

## Argument

**1. Plaintiff's Complaint Fails to Assert Allegations Against the Trust**

After reviewing Plaintiff's *Complaint* [ECF No. 1], it is apparent that Plaintiff has not pleaded any factual allegations—or any legal theory—capable of supporting a claim against the Trust. It is not entirely clear what Plaintiff's claims are, but whatever they are such are directed exclusively at actions allegedly taken (or not taken) by Mr. Hudson in connection with issuing the SUP, including: (1) a purported failure to publish notice and allow public comment as allegedly required by the National Environmental Policy Act ("NEPA"), (ECF No. 1 at ¶¶ 14, 16, 18, 31 and 34–36); (2) an alleged failure to conduct another environmental analysis before issuance of the SUP, (*id*. at ¶¶ 16, 18 and 32); (3) allegations that the SUP authorizes or has been used for activities beyond what a special use permit allows, (*id*. at ¶¶ 22, 24 and 26–28); and (4) allegations that Plaintiff's due process rights were violated, (*id*. at ¶¶ 29–30). No doubt Mr. Hudson will establish

that these claims fail on the merits.

Concerning the Trust specifically, the only factual allegations found within the *Complaint* [ECF No. 1] are:

- Paragraph 18: "The [SUP] states that the permit holder, [the Trust,] has been issued a permit[.]"

- Paragraph 19: "Neither the FONSI nor the [EA] performed in 2009 through 2012 authorized, address or contemplate the impact of a 36-housing unit complex on the [Nelson Location] for occupancy by non-forest service employees chosen by the [Trust]."

- Paragraph 22: "Nowhere does Section 251.53 authorize the use specified in the [SUP] for the construction of 36 residential units be 'constructed, operated and maintained' by the [Trust] as an apartment complex wherein: only 13 units are available not to the Public or Plaintiff but only tenants chosen by the [Trust.]"

- Paragraph 27: "[…] the [Trust] gets to determine who may occupy the remaining units, and pay no fee."

- Paragraph 41: "In December, 2025, the [Trust] secured funding in part from the Town of Jackson for the project set forth in the [SUP] and has announced its intention to begin construction in the spring of 2026."

As explained below, even accepting Plaintiff's allegations at face value, the *Complaint* [ECF No. 1] reads as a challenge to federal agency decision-making—not conduct by the Trust. Each "wrong" Plaintiff identifies arises from alleged procedural issues in the government's issuance of the SUP and related NEPA processes (notice, public participation, and environmental analysis), plus a constitutional due-process theory premised on government action. Those alleged violations that Plaintiff puts forth – which Mr. Hudson will provide to be unfounded – focus on the federal

government and the federal decisionmaker because only the agency issues the permit, prepares the NEPA documents, and provides whatever process is legally required. By contrast, the Trust is a non-profit organization that in no way can be considered a governmental entity charged with complying with NEPA, promulgating notice procedures, or affording due process. Plaintiff's only Trust-specific allegations, to the extent they are even allegations, do not convert federal procedural challenges into a cognizable claim against an innocent non-profit. At most, Plaintiff's mention of the Trust describes downstream consequences of a federal permitting decision, which is precisely the sort of dispute that must be directed at the federal government—not the Trust.

## 2. The Allegations and Claims do not State a Cause of Action Against the Trust

### a. Constitutional Claims

Starting first with Plaintiff's constitutional claims, he bases such on the Fourteenth Amendment. (ECF No. 1 at ¶ 30). However, Plaintiff's *Complaint* [ECF No. 1] lacks a single allegation of any *state* activity. (*See* generally ECF No. 1). Tenth Circuit precedent provides:

> There are two constitutional sources of due process rights, the Fifth Amendment and the Fourteenth Amendment. Plaintiffs pursuing procedural due process claims based on actions by the federal government must proceed under the Fifth Amendment, while plaintiffs bringing such claims based on actions by state governments must proceed under the Fourteenth Amendment.

*Doe v. Univ. of Denver*, 952 F.3d 1182, 1187 (10th Cir. 2020).

Even if allegations concerning the Fifth Amendment were present – or if the Court was generous enough to allow the Plaintiff to proceed as if he plead Fifth Amendment violations – the Trust is not a state or federal actor and there are no allegations claiming otherwise. As a matter of law, there cannot be. It may be the case Plaintiff will argue that the Trust has engaged in activity that is by and through the power of the state or federal government. In that case, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action'

that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295, 121 S. Ct. 924, 930, 148 L. Ed. 2d 807 (2001). There are no allegations in the *Complaint* [ECF No. 1] supporting such an analysis, as simply being granted a permit from the federal government does not make one a state or federal actor.

    **b. NEPA Claims**

Concerning Plaintiff's residual NEPA claims, "NEPA does not provide for a private right of action, so [courts] review a NEPA challenge under the standards set forth in the [Administrative Procedure Act]." *Rocky Mountain Peace & Just. Ctr. v. United States Fish & Wildlife Serv.*, 40 F.4th 1133, 1142 (10th Cir. 2022). "Under the APA, a person suffering legal wrong *because of agency action*, or adversely affected or aggrieved *by agency action* ..., is entitled to judicial review thereof." *Id*. citing 5 U.S.C. §702 (emphasis added). "A court will set aside *an agency action* if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Id*., (emphasis added).

As explained in the constitutional analysis above, Plaintiff's *Complaint* [ECF No. 1] is void of any factual allegations that the Trust is a federal or state agency, an agent of such an agency, or otherwise acted in an official capacity as required to invoke review under the APA. *See* 5 U.S.C. § 701(b). NEPA imposes procedural obligations on federal agencies—not private parties—and NEPA claims challenge final *agency* action. *See Hellrich v. Metro. Edison Co.*, 18 Fed. R. Serv. 2d 719 (E.D. Pa. 1974) (explaining that under NEPA, the statutory obligations are imposed solely upon the appropriate federal agency); *Donelson v. United States*, No. 14-CV-316-JHP-FHM, 2016 WL 1301169, at *5 (N.D. Okla. Mar. 31, 2016) (finding that the non-federal defendants in the case were not subject to NEPA requirements and because state law claims against those same

defendants would be resolved by the underlying NEPA claims against the government, the non-federal defendants were dismissed from the case).

The Trust has not conducted any "agency action." So, even if Plaintiff had pleaded a viable NEPA theory, which he has not, it would necessarily be a claim that Mr. Hudson acted arbitrarily, capriciously, or contrary to law in issuing the permit without additional analysis or notice.[1] The *Complaint* [ECF No. 1] contains no allegations that the Trust controlled, directed, or participated in any federal NEPA process in a manner that could make the Trust liable for the alleged procedural defects. On the pleaded facts, the Trust is not a proper defendant for an APA claim seeking to set aside federal agency action.

Also helpful in the analysis is the Ninth Circuit's former ban on allowing private parties to intervene in cases such as this. In *Sierra Club v. U.S. E.P.A.*, the Ninth Circuit explained that "NEPA does not regulate the conduct of private parties or state or local governments. It regulates the federal government." *Sierra Club v. U.S. E.P.A.*, 995 F.2d 1478, 1485 (9th Cir. 1993), abrogated by *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011). "Since NEPA requires only action by the government, no private party can comply with NEPA. It is for that reason that in a lawsuit to compel compliance with NEPA, no one but the federal government can be a defendant." *Id*.

Although in *Sierra Club* the court was focused on the right of private parties to intervene and applied its since abandoned "federal defendant rule," the court's reasoning is instructive in this matter. The Trust is not a federal governmental agency. The Trust did not issue the challenged decision or associated documents. The Trust does not control the federal process that Plaintiff complains of. Rather, the Trust is a Wyoming nonprofit organization whose mission is to expand

---

[1] The Trust believes Mr. Hudson, or more accurately the Forest Service, was well within his authority in granting the SUP.

and preserve affordable housing opportunities for individuals and families living and working in Teton County, Wyoming.

### c. Indispensable Party

In an act of legal desperation, Plaintiff may try to contend the Trust should stay stuck in this case as some sort of obligatory party. While the Trust holds the SUP, Rule 19 of the Federal Rules of Civil Procedure does not allow Plaintiff to dictate whether the Trust must personally appear to defend government-geared claims. And the Federal Rules certainly do not permit Plaintiff to force a non-profit like the Trust to participate in expensive federal litigation unnecessarily. While Plaintiff thinks he can gain an advantage against Mr. Hudson and the Government by wrangling in a private non-profit, precedent provides otherwise. The only legitimate question the Court must consider comes from Rule 19 of the Federal Rules of Civil Procedure: Can Mr. Hudson and Plaintiff fairly litigate the merits of the federal government agency's decision, without the Trust? The answer is yes.

Rule 19(a) of the Federal Rules of Civil Procedure states that a person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

A. in that person's absence, the court cannot afford complete relief among the existing parties; or

B. that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: i) as a practical matter impair or impede the person's ability to protect the interest or leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

F.R.C.P 19(a).

The first consideration is whether, in the absence of the Trust, complete relief could be afforded among the other defendants in this action. The answer is yes, and in fact, the relief

Plaintiff seeks may *only* be afforded to him through successful action against the federal government. Because Plaintiff's action focuses solely on the propriety of agency action, the absence of the Trust does not prevent Plaintiff from receiving his requested declaratory relief. *See Sac & Fox Nation of Missouri v. Norton*, 240 F.3d 1250, 1258 (10th Cir. 2001) (finding that the Wyandotte Tribe was not an indispensable party because, *inter alia*, its absence would not prevent plaintiffs from receiving their requested relief). Plaintiff's potential injunctive relief likewise does not require the Trust. The Court can enjoin the federal defendant from issuing, implementing, or allowing reliance on the SUP. If that relief is granted, the SUP is legally ineffective, and any prospective construction necessarily stops because the Trust would lack any authorization to act.

Second, while the Trust has an interest in the SUP, proceeding without the Trust does not, as a practical matter, impair its ability to protect that interest within the meaning of Rule 19(a)(1)(B), nor does it create any meaningful risk of inconsistent obligations. The Trust's interest is entirely derivative of the federal determinations being challenged: the Trust retains the SUP only if those determinations are upheld. And that precise issue is already being fully and competently defended by Mr. Hudson and experienced federal counsel whose interest in defending the challenged decision is "virtually identical" to the Trust's interest in seeing the SUP sustained. *See Sac & Fox Nation of Missouri*, 240 F.3d at 1258 (finding that the federal government's interest in defending its determinations were virtually identical to the interests of the Wyandotte Tribe, thereby greatly reducing the potential of any prejudice).

In other words, the case presents a single, binary question about the validity of Mr. Hudson's decision; the Trust does not have a separate, independent legal position that must be litigated for the Court to adjudicate Plaintiff's claims. Finally, there is no realistic prospect that Mr. Hudson (or any other existing party) will face double, multiple, or otherwise inconsistent

obligations in the Trust's absence. There is one final agency action, one administrative record, and any declaratory or injunctive relief imposed against Mr. Hudson, if granted, would necessarily negate or render unenforceable the SUP regardless of whether the Trust is a named party. Rule 19(a)(1)(B)(ii) therefore is not implicated.

## Conclusion

For the reasons set forth above, the Trust should be dismissed from this matter. Even accepting the allegations within the *Complaint* as true, Plaintiff pleads no facts that state a plausible claim for relief against the Trust. NEPA imposes duties on federal agencies, not private actors. Likewise, the procedure set forth by the APA is intended to challenge final agency actions, and the Trust took no such action. Plaintiff's constitutional allegations fail for similar reasons, because the Trust took no actions under the color of federal or state authority and Plaintiff alleges no facts that could plausibly establish the requisite nexus for constitutional liability. In short, Plaintiff challenges government process and government decision-making, nothing more.

As a matter of law, the Trust is not required for this case to proceed. There is one final agency action, one administrative record, and any relief will bind the federal officials responsible for administering the SUP and will determine the SUP's legal effect regardless of whether the Trust is named in this matter. Keeping the Trust in the case adds nothing to the Court's ability to resolve Plaintiff's claims.

Finally, sensibility and logical considerations demand the dismissal of the Trust. The Trust is a local nonprofit with limited resources. It is not a special interest group, a conservation group, or otherwise a typical player in actions such as this. It did not make the challenged decision, and it did not control the federal process Plaintiff contests. It accepted the SUP to help provide stable, affordable housing for Forest Service employees and individuals in a community desperate for

affordable housing. Keeping the Trust as a named defendant in a federal lawsuit based on governmental action will impose substantial costs and deplete internal resources of an organization whose mission is community service - not litigation. The Trust sincerely hopes this matter is resolved promptly and believes the record will demonstrate that Mr. Hudson and the Forest Service acted lawfully and in compliance with the governing procedures. The Trust's continued presence as a named defendant serves no practical purpose. It only diverts limited nonprofit resources away from providing affordable housing while the Court resolves the federal issues presented.

DATED this 21st day of January, 2026.

By: ___*/s/ Brent R. Rhodes*___
Tyler J. Garrett, WSB #6-4400
Brent R. Rhodes, WSB #7-6494
HATHAWAY & KUNZ, LLP
2515 Warren Avenue, Suite 500
P.O. Box 1208
Cheyenne, WY 82003-1208
Phone: 307-634-7723
Fax: 307-634-0985
tgarrett@hkwyolaw.com
brhodes@hkwyolaw.com

# CERTIFICATE OF SERVICE

      This is to certify that on January 21, 2026, a true and correct copy of the foregoing was served upon counsel as follows:

| | |
|---|---|
| Michael J. Clement<br>15 Nelson Drive<br>P.O. Box 1067<br>Jackson, Wyoming 83001-1067<br>mclement@wispearl.com<br>Phone: (267) 664-5403<br>*Pro Se Plaintiff* | [ ✓ ] CM/ECF<br>[   ] U.S. Mail<br>[   ] E-mail: |
| Jeremy Gross<br>United States Attorney's Office<br>2120 Capitol Avenue, Suite 4002<br>P.O. Box 668<br>Cheyenne, Wyoming 82001<br>Phone: (307) 772-2124<br>*Attorney for USDA Forest Service Bridger-Teton*<br>*National Forest Supervisor Chad Hudson* | [ ✓ ] CM/ECF<br>[   ] U.S. Mail<br>[   ] E-mail |

                                              */s/ Lori Pallak*
                                              Hathaway & Kunz, LLP